(Slip Opinion) OCTOBER TERM, 2018 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SMITH *v.* BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 17–1606. Argued March 18, 2019—Decided May 28, 2019

The Social Security Act permits judicial review of "any final decision . . . after a hearing" by the Social Security Administration (SSA). 42 U. S. C. §405(g). Claimants for, as relevant here, supplemental security income disability benefits under Title XVI of the Act must generally proceed through a four-step administrative process in order to obtain federal-court review: (1) seek an initial determination of eligibility; (2) seek reconsideration of that determination; (3) request a hearing before an administrative law judge (ALJ); and (4) seek review of the ALJ's decision by the SSA's Appeals Council. See 20 CFR §416.1400. A request for Appeals Council review generally must be made within 60 days of receiving the ALJ's ruling, §416.1468; if the claimant misses the deadline and cannot show good cause for doing so, the Appeals Council dismisses the request, §416.1471.

Petitioner Ricky Lee Smith's claim for disability benefits under Title XVI was denied at the initial-determination stage, upon reconsideration, and on the merits after a hearing before an ALJ. The Appeals Council later dismissed Smith's request for review as untimely. Smith sought judicial review of the dismissal in a Federal District Court, which held that it lacked jurisdiction to hear the suit. The Sixth Circuit affirmed, maintaining that the Appeals Council's dismissal of an untimely petition is not a "final decision" subject to federal-court review.

*Held*: An Appeals Council dismissal on timeliness grounds after a claimant has had an ALJ hearing on the merits qualifies as a "final decision . . . made after a hearing" for purposes of allowing judicial review under §405(g). Pp. 5–16.

(a) The statute's text supports this reading. In the first clause

("any final decision"), the phrase "final decision" clearly denotes some kind of terminal event, and Congress' use of "any" suggests an intent to use that term "expansive[ly]," *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 218–219. The Appeals Council's dismissal of Smith's claim fits that language: The SSA's regulations make it the final stage of review. See 20 CFR §416.1472. As for the second clause ("made after a hearing"), Smith obtained the kind of hearing that §405(g) most naturally suggests: an ALJ hearing on the merits. This case differs from *Califano* v. *Sanders*, 430 U. S. 99, where the Court found that the SSA's denial of a claimant's petition to reopen a prior denial of his claim for benefits—a second look that the agency had made available to claimants as a matter of grace—was not a final decision under §405(g). Here, by contrast, the SSA's "final decision" is much more closely tethered to the relevant "hearing." A primary application for benefits may not be denied without an ALJ hearing (if requested), §405(b)(1), and a claimant's access to this first bite at the apple is a matter of legislative right rather than agency grace. There is also no danger here of thwarting Congress' own deadline, where the only potential untimeliness concerns Smith's request for Appeals Council review, not his request for judicial review following the agency's ultimate determination. Pp. 6–9.

(b) The statutory context also weighs in Smith's favor. Appeals from SSA determinations are, by their nature, appeals from the action of a federal agency. In the separate administrative-law context of Administrative Procedure Act (APA) review, an action is "final" if it both (1) "mark[s] the 'consummation' of the agency's decisionmaking process" and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett* v. *Spear*, 520 U. S. 154, 177–178. Both conditions are satisfied when a Social Security claimant has reached the final step of the SSA's four-step process and has had his request for review dismissed as untimely. While the administrative-exhaustion requirement "should be applied with regard for the particular administrative scheme at issue," *Weinberger* v. *Salfi*, 422 U. S. 749, 765, the differences between the two Acts here suggest that Congress wanted more oversight by the courts rather than less under §405(g) and that "Congress designed [the statute as a whole] to be 'unusually protective' of claimants," *Bowen* v. *City of New York*, 476 U. S. 467, 480. SSA is also a massive enterprise and mistakes will occur; Congress did not suggest that it intended for this claimant-protective statute to leave a claimant with no recourse to the courts if a mistake does happen. Pp. 9–10.

(c) Smith's entitlement to judicial review is confirmed by "the strong presumption that Congress intends judicial review of administrative action." *Bowen* v. *Michigan Academy of Family Physicians*,

476 U. S. 667, 670. The heavy burden for rebutting this presumption is not met here. Congress left it to the SSA to define the procedures that claimants like Smith must first pass through, but it has not suggested that it intended for the SSA to be the unreviewable arbiter of whether claimants have complied with those procedures. Pp. 10–11.

(d) The arguments of *amicus* in support of the judgment do not alter this conclusion. *Amicus* first argues that the phrase "final decision . . . made after a hearing" refers to a conclusive disposition, after exhaustion, of a benefits claim on the merits. However, this Court's precedents do not support that reading; the Appeals Council's dismissal is not merely collateral but an end to a proceeding in which a substantial factual record has already been developed and on which considerable resources have already been expended; and Smith's case is distinct from *Sanders*. *Amicus* also claims that permitting greater judicial review could risk a flood of litigation, given the large volume of claims handled by the SSA, but that result is unlikely, because the number of Appeals Council untimeliness dismissals is comparatively small, and because data from the Eleventh Circuit, which follows the interpretation adopted here, do not bear out *amicu*s' warning. Third, *amicus* flags related contexts that could be informed by this ruling, but those issues are not before the Court. Finally, *amicus* argues that §405(g) is ambiguous and that the SSA's longstanding interpretation of its meaning—prior to a change of position in this case—is entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, but this is not the kind of question on which courts defer to agencies. Pp. 11–14.

(e) A reviewing court that disagrees with the procedural ground for the Appeals Council dismissal should in the ordinary case remand the case to allow the agency to address substantive issues in the first place. While there would be jurisdiction for a court to reach the merits, this general rule comports with fundamental administrative-law principles and is confirmed by the Court's cases discussing exhaustion in the Social Security context, see *City of New York*, 476 U. S., at 485. Pp. 14–16.

880 F. 3d 813, reversed and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–1606

_____

## RICKY LEE SMITH, PETITIONER *v.* NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[May 28, 2019]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Social Security Act allows for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration (SSA). 42 U. S. C. §405(g). Petitioner Ricky Lee Smith was denied Social Security benefits after a hearing by an administrative law judge (ALJ) and later had his appeal from that denial dismissed as untimely by the SSA's Appeals Council—the agency's final decisionmaker. This case asks whether the Appeals Council's dismissal of Smith's claim is a "final decision . . . made after a hearing" so as to allow judicial review under §405(g). We hold that it is.

I

A

Congress enacted the Social Security Act in 1935, responding to the crisis of the Great Depression. 49 Stat. 620; F. Bloch, Social Security Law and Practice 13 (2012). In its early days, the program was administered by a body called the Social Security Board; that role has since passed

on to the Board's successor, the SSA.[1]

In 1939, Congress amended the Act, adding various provisions that—subject to changes not at issue here— continue to govern cases like this one. See Social Security Act Amendments of 1939, ch. 666, 53 Stat. 1360. First, Congress gave the agency "full power and authority to make rules and regulations and to establish procedures . . . necessary or appropriate to carry out" the Act. §405(a). Second, Congress directed the agency "to make findings of fac[t] and decisions as to the rights of any individual applying for a payment" and to provide all eligible claimants—that is, people seeking benefits—with an "opportunity for a hearing with respect to such deci-sion[s]." §405(b)(1). Third, and most centrally, Congress provided for judicial review of "any final decision of the [agency] made after a hearing." §405(g). At the same time, Congress made clear that review would be available only "as herein provided"—that is, only under the terms of §405(g). §405(h); see *Heckler* v. *Ringer*, 466 U. S. 602, 614–615 (1984).

In 1940, the Social Security Board created the Appeals Council, giving it responsibility for overseeing and review-ing the decisions of the agency's hearing officers (who, today, are ALJs).[2] Though the Appeals Council originally had just three members, its ranks have since swelled to include over 100 individuals serving as either judges or officers.[3] The Appeals Council remains a creature of regulatory rather than statutory creation.

Today, the Social Security Act provides disability bene-

---

[1] See Koch & Koplow, The Fourth Bite at the Apple: A Study of the Operation and Utility of the Social Security Administration's Appeals Council, 17 Fla. St. U. L. Rev. 199, 234–235 (1990) (Koch & Koplow).

[2] See *id.*, at 235.

[3] SSA, Brief History and Current Information About the Appeals Council, https://www.ssa.gov/appeals/about_ac.html (all Internet mate-rials as last visited May 22, 2019).

fits under two programs, known by their statutory headings as Title II and Title XVI. See §401 *et seq.* (Title II); §1381 *et seq.* (Title XVI). Title II "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen* v. *Galbreath*, 485 U. S. 74, 75 (1988). Title XVI provides supplemental security income benefits "to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Ibid.* The regulations that govern the two programs are, for today's purposes, equivalent. See *Sims* v. *Apfel*, 530 U. S. 103, 107, n. 2 (2000).[4] Likewise, §405(g) sets the terms of judicial review for each. See §1383(c)(3).

Modern-day claimants must generally proceed through a four-step process before they can obtain review from a federal court. First, the claimant must seek an initial determination as to his eligibility. Second, the claimant must seek reconsideration of the initial determination. Third, the claimant must request a hearing, which is conducted by an ALJ. Fourth, the claimant must seek review of the ALJ's decision by the Appeals Council. See 20 CFR §416.1400. If a claimant has proceeded through all four steps on the merits, all agree, §405(g) entitles him to judicial review in federal district court.[5]

The tension in this case stems from the deadlines that SSA regulations impose for seeking each successive stage of review. A party who seeks Appeals Council review, as relevant here, must file his request within 60 days of receiving the ALJ's ruling, unless he can show "good cause for missing the deadline." §416.1468.

The Appeals Council's review is discretionary: It may deny even a timely request without issuing a decision. See

———————

[4] Because Smith seeks benefits under Title XVI, we cite to the regulations that govern Title XVI, which are located at 20 CFR pt. 416 (2018). The regulations that govern Title II are located at 20 CFR pt. 404.

[5] Of course, if the result at any of the four preceding stages is fully favorable, there is generally no need to proceed further.

§416.1481. If a claimant misses the deadline and cannot show good cause, however, the Appeals Council does not deny the request but rather dismisses it. §416.1471. Dismissals are "binding and not subject to further review" by the SSA. §416.1472. The question here is whether a dismissal for untimeliness, after the claimant has had an ALJ hearing, is a "final decision . . . made after a hearing" for purposes of allowing judicial review under §405(g).

## B

Petitioner Ricky Lee Smith applied for disability benefits under Title XVI in 2012. Smith's claim was denied at the initial-determination stage and upon reconsideration. Smith then requested an ALJ hearing, which the ALJ held in February 2014 before issuing a decision denying Smith's claim on the merits in March 2014.

The parties dispute what happened next. Smith's attorney says that he sent a letter requesting Appeals Council review in April 2014, well within the 60-day deadline. The SSA says that it has no record of receiving any such letter. In late September 2014, Smith's attorney sent a copy of the letter that he assertedly had mailed in April. The SSA, noting that it had no record of prior receipt, counted the date of the request as the day that it received the copy. The Appeals Council accordingly determined that Smith's submission was untimely, concluded that Smith lacked good cause for missing the deadline, and dismissed Smith's request for review.

Smith sought judicial review of that dismissal in the U. S. District Court for the Eastern District of Kentucky. The District Court held that it lacked jurisdiction to hear his suit. The U. S. Court of Appeals for the Sixth Circuit affirmed, maintaining that "an Appeals Council decision to refrain from considering an untimely petition for review is not a 'final decision' subject to judicial review in federal court.'" *Smith* v. *Commissioner of Social Security*, 880

F. 3d 813, 814 (2018).

Smith petitioned this Court for certiorari. Responding to Smith's petition, the Government stated that while the Sixth Circuit's decision accorded with the SSA's longstanding position, the Government had "reexamined the question and concluded that its prior position was incorrect." Brief for Respondent on Pet. for Cert. 15.

We granted certiorari to resolve a conflict among the Courts of Appeals. 586 U. S. \_\_\_ (2018).[6] Because the Government agrees with Smith that the Appeals Council's dismissal meets §405(g)'s terms, we appointed Deepak Gupta as *amicus curiae* to defend the judgment below. 586 U. S. \_\_\_ (2018). He has ably discharged his duties.

## II

Section 405(g), as noted above, provides for judicial review of "any final decision . . . made after a hearing." This provision, the Court has explained, contains two separate elements: first, a "jurisdictional" requirement that claims be presented to the agency, and second, a "waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted." *Mathews* v. *Eldridge*, 424 U. S. 319, 328 (1976). This case involves the latter, nonjurisdictional element of administrative exhaustion. While §405(g) delegates to the SSA the authority to dictate which steps are generally required, see *Sims*, 530 U. S., at 106, exhaustion of those steps may not

————————

[6] Seven Courts of Appeals have held that there is no judicial review under these circumstances, while two have held that there is. Compare *Brandtner* v. *Department of Health & Human Servs.*, 150 F. 3d 1306, 1307 (CA10 1998); *Bacon* v. *Sullivan*, 969 F. 2d 1517, 1520 (CA3 1992); *Matlock* v. *Sullivan,* 908 F. 2d 492, 494 (CA9 1990); *Harper* v. *Bowen,* 813 F. 2d 737, 743 (CA5 1987); *Adams* v. *Heckler,* 799 F. 2d 131, 133 (CA4 1986); *Smith* v. *Heckler*, 761 F. 2d 516, 518 (CA8 1985); *Dietsch* v. *Schweiker,* 700 F. 2d 865, 867 (CA2 1983), with *Casey* v. *Berryhill*, 853 F. 3d 322, 326 (CA7 2017); *Bloodsworth* v. *Heckler,* 703 F. 2d 1233, 1239 (CA11 1983).

only be waived by the agency, see *Weinberger* v. *Salfi*, 422 U. S. 749, 767 (1975), but also excused by the courts, see *Bowen* v. *City of New York*, 476 U. S. 467, 484 (1986); *Eldridge*, 424 U. S., at 330.[7]

The question here is whether a dismissal by the Appeals Council on timeliness grounds after a claimant has received an ALJ hearing on the merits qualifies as a "final decision . . . made after a hearing" for purposes of allowing judicial review under §405(g). In light of the text, the context, and the presumption in favor of the reviewability of agency action, we conclude that it does.

## A

We begin with the text. Taking the first clause ("any final decision") first, we note that the phrase "final decision" clearly denotes some kind of terminal event,[8] and Congress' use of the word "any" suggests an intent to use that term "expansive[ly]," see *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 218–219 (2008). The Appeals Council's dismissal of Smith's claim fits that language: Under the SSA's own regulations, it was the final stage of

_____

[7] While *Califano* v. *Sanders*, 430 U. S. 99 (1977), can be read to cabin *Eldridge* and *Salfi* to only constitutional claims, the Court's subsequent decision in *City of New York* demonstrates that this understanding of §405(g) can extend to cases lacking *Eldridge*'s and *Salfi*'s constitutional character. See *City of New York*, 476 U. S., at 474–475, and n. 5, 482–484; see also *City of New York* v. *Heckler*, 578 F. Supp. 1109, 1124–1125 (EDNY 1984) (ruling that the agency's actions violated the Social Security Act and its own regulations and thus declining to reach the plaintiffs' constitutional argument).

[8] See 5 Oxford English Dictionary 920 (2d ed. 1989) (Final: "Marking the last stage of a process; leaving nothing to be looked for or expected; ultimate"); 4 Oxford English Dictionary 222 (1933) (same); see also Webster's New World College Dictionary 542 (5th ed. 2016) (Final: "leaving no further chance for action, discussion, or change; deciding; conclusive"); Merriam-Webster's Collegiate Dictionary 469 (11th ed. 2011) (Final: "coming at the end: being the last in a series, process, or progress").

review.  See 20 CFR §416.1472.

Turning to the second clause ("made after a hearing"), we note that this phrase has been the subject of some confusion over the years.  On the one hand, the statute elsewhere repeatedly uses the word "hearing" to signify an ALJ hearing,[9] which suggests that, in the ordinary case, the phrase here too denotes an ALJ hearing.  See, *e.g.*, *IBP*, *Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005) (noting "the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning").  On the other hand, the Court's precedents make clear that an ALJ hearing is not an ironclad prerequisite for judicial review.  See, *e.g.*, *City of New York*, 476 U. S., at 484 (emphasizing the Court's "'intensely practical'" approach to the applicability of the exhaustion requirement and disapproving "mechanical application" of a set of factors).

There is no need today to give §405(g) a definition for all seasons, because, in any event, this is a mine-run case and Smith obtained the kind of hearing that §405(g) most naturally suggests: an ALJ hearing on the merits.[10]  In other words, even giving §405(g) a relatively strict read-

—————

[9] See 42 U. S. C. §405(b)(1) (entitling claimants to a hearing on the merits); §405(b)(2) (discussing "reconsideration" of certain findings "before any hearing under paragraph (1) on the issue of such entitlement"); §405(g) (discussing factual findings and evidence resulting from such a "hearing"); §405(h) (discussing binding effect of decision "after a hearing"); see also §§1383(c)(1)(A), (3) (similar).

[10] We note as well that the "hearing" referred to in §405(g) cannot be a hearing before the Appeals Council.  Congress provided for a hearing in §405(b) and for judicial review "after a hearing" in §405(g) before the Appeals Council even existed.  See *supra,* at 2.  Moreover, the Appeals Council makes many decisions without a hearing—*e.g.,* denying a petition for review without giving reasons—that are nevertheless plainly reviewable.  See 20 CFR §§ 416.1400(a)(5), 416.1467, 416.1481.  Accordingly, the fact that there was no Appeals Council hearing—much like the fact that there was no reasoned Appeals Council decision on the merits—does not bar review.

ing, Smith appears to satisfy its terms.[11]

Smith cannot, however, satisfy §405(g)'s "after a hearing" requirement as a matter of mere chronology.[12]   In *Califano* v. *Sanders*, 430 U. S. 99 (1977), the Court considered whether the SSA's denial of a claimant's petition to reopen a prior denial of his claim for benefits qualified as a final decision under §405(g).   *Id.*, at 102–103, 107–109. The Court concluded that it did not, reasoning that a petition to reopen was a matter of agency grace that could be denied without a hearing altogether and that allowing judicial review would thwart Congress' own deadline for seeking such review.  See *id.*, at 108–109.  That the SSA's denial of the petition to reopen (1) was conclusive and (2) postdated an ALJ hearing did not, alone, bring it within the meaning of §405(g).

Here, by contrast, the SSA's "final decision" is much more closely tethered to the relevant "hearing."  Unlike a petition to reopen, a primary application for benefits may not be denied without an ALJ hearing (assuming the claimant timely requests one, as Smith did).  §405(b)(1). Moreover, the claimant's access to this first bite at the apple is indeed a matter of legislative right rather than agency grace.  See *id.*, at 108.  And, again unlike the situation in *Sanders*, there is no danger here of thwarting Congress' own deadline, given that the only potential untimeliness here concerns Smith's request for Appeals

―――――――――――

[11] We return below to the possibility, suggested by *amicus*, that "final decision . . . made after a hearing" could signify a final decision "on a matter on which the Act requires a hearing."  Brief for Court-Appointed *Amicus Curiae* 13; see *infra*, at 11–12.  Here, we note only that while Congress certainly could have written something like "final decision on the merits . . . made after a hearing," it did not.

[12] The alternative risks untenable breadth.  The Battle of Yorktown predates our ruling today, but no one would describe today's opinion as a "decision made after the Battle of Yorktown."  As we explain, however, the dismissal of Smith's claim is tethered to Smith's hearing in a way that more distant events are not.

Council review—not his request for judicial review follow-ing the agency's ultimate determination.

## B

The statutory context weighs in Smith's favor as well. Appeals from SSA determinations are, by their nature, appeals from the action of a federal agency, and in the separate administrative-law context of the Administrative Procedure Act (APA), an action is "final" if it both (1) "mark[s] the 'consummation' of the agency's decisionmak-ing process" and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett* v. *Spear*, 520 U. S. 154, 177–178 (1997). Both conditions are satisfied when a Social Secu-rity claimant has reached the fourth and final step of the SSA's four-step process and has had his request for review dismissed as untimely. It is consistent to treat the Ap-peals Council's dismissal of Smith's claim as a final deci-sion as well.

To be clear, "the doctrine of administrative exhaustion should be applied with a regard for the particular admin-istrative scheme at issue," *Salfi*, 422 U. S., at 765, and we leave this axiom undisturbed today. The Social Security Act and the APA are different statutes, and courts must remain sensitive to their differences. See, *e.g.*, *Sullivan* v. *Hudson*, 490 U. S. 877, 885 (1989) (observing that "[a]s provisions for judicial review of agency action go, §405(g) is somewhat unusual" in that its "detailed provisions . . . suggest a degree of direct interaction between a federal court and an administrative agency alien to" APA review). But at least some of these differences suggest that Con-gress wanted more oversight by the courts in this context rather than less, see *ibid.*,[13] and the statute as a whole is

—————

[13] The noteworthy counterpoint is §405(h), which withdraws federal-court jurisdiction under 28 U. S. C. §§ 1331, 1346. While that provision clearly serves "to route review through" §405(g), see *Sanders*, 430 U. S.,

one that "Congress designed to be 'unusually protective' of claimants," *City of New York*, 476 U. S., at 480.

We note further that the SSA is a massive enterprise,[14] and mistakes will occur. See Brief for National Organization of Social Security Claimants' Representatives as *Amicus Curiae* 13 (collecting examples).[15] The four steps preceding judicial review, meanwhile, can drag on for years.[16] While mistakes by the agency may be admirably rare, we do not presume that Congress intended for this claimant-protective statute, see *City of New York*, 476 U. S., at 480, to leave a claimant without recourse to the courts when such a mistake does occur—least of all when the claimant may have already expended a significant amount of likely limited resources in a lengthy proceeding.

C

Smith's entitlement to judicial review is confirmed by "the strong presumption that Congress intends judicial review of administrative action." *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670 (1986). "That presumption," of course, "is rebuttable: It fails when a statute's language or structure demonstrates that Con-

───────────

at 103, n. 3; see also *Heckler* v. *Ringer*, 466 U. S. 602, 614–615 (1984), that routing choice does not simultaneously constrict the route that Congress did provide.

[14] For example, the agency receives roughly 2.5 million new disability claims per year. See SSA, Annual Performance Report Fiscal Years 2017–2019, p. 32 (Feb. 12, 2018), https://www.ssa.gov/budget/FY19Files/2019APR.pdf.

[15] See also Koch & Koplow 257 (noting that each Appeals Council member "typically spends only ten to fifteen minutes reviewing an average case" given "the pressures of the caseload").

[16] See SSA, FY 2020 Congressional Justification 9 (Mar. 2019) (estimating 2019 average processing time for the first three steps at 113 days, 105 days, and 515 days, respectively), https://www.ssa.gov/budget/FY20Files/FY20-JEAC.pdf; Brief for National Organization of Social Security Claimants' Representatives as *Amicus Curiae* 11.

gress wanted an agency to police its own conduct." *Mach Mining, LLC* v. *EEOC*, 575 U. S. 480, \_\_\_–\_\_\_ (2015) (slip op., at 4–5). But the burden for rebutting it is "'heavy,'" *id.*, at \_\_\_ (slip op., at 5), and that burden is not met here. While Congress left it to the SSA to define the procedures that claimants like Smith must first pass through, see *Sims*, 530 U. S., at 106, Congress has not suggested that it intended for the SSA to be the unreviewable arbiter of whether claimants have complied with those procedures. Where, as here, a claimant has received a claim-ending timeliness determination from the agency's last-in-line decisionmaker after bringing his claim past the key procedural post (a hearing) mentioned in §405(g), there has been a "final decision . . . made after a hearing" under §405(g).[17]

## III

*Amicus*' arguments to the contrary have aided our consideration of this case, but they have not dissuaded us from concluding that the Appeals Council's dismissal of Smith's claim satisfied §405(g).

*Amicus* first argues that the phrase "final decision . . . made after a hearing" refers to a conclusive disposition, after exhaustion, of a benefits claim on the merits—that is, on a basis for which the Social Security Act entitles a claimant to a hearing. This reading follows, *amicus* argues, from the Court's observations that §405(g) generally requires exhaustion, and moreover from *Sanders*' suggestion, see 430 U. S., at 108, that review is not called for

_____

[17] A different question would be presented by a claimant who assertedly faltered at an earlier step—*e.g.,* whose request for an ALJ hearing was dismissed as untimely and who then appealed that determination to the Appeals Council before seeking judicial review. While such a claimant would not have received a "hearing" at all, the Court's precedents also make clear that a hearing is not always required. See *supra,* at 5–6. Because such a situation is not before us, we do not address it.

where a claimant loses on an agency-determined proce-
dural ground that is divorced from the substantive mat-
ters for which a hearing is required.  Even if Smith did
receive a hearing on the merits, *amicus* argues, the con-
clusive determination was not on that basis, and "[i]t
would be unnatural to read the statute as throwing open
the gates to judicial review of any final decision, no matter
how collateral," just because such a hearing occurred.
Brief for Court-Appointed *Amicus Curiae* 34.

We disagree.  First, as noted above, the Court's prece-
dents do not make exhaustion a pure necessity, indicating
instead that while the SSA is empowered to define the
steps claimants must generally take, the SSA is not also
the unreviewable arbiter of whether a claimant has suffi-
ciently complied with those steps.  See *supra*, at 5–6, and
n. 7.  Second, the Appeals Council's dismissal is not mere-
ly collateral; such a dismissal calls an end to a proceeding
in which a substantial factual record has already been
developed and on which considerable resources have al-
ready been expended.  See *supra*, at 10, and n. 16.  Accept-
ing *amicus*' argument would mean that a claimant could
make it to the end of the SSA's process and then have
judicial review precluded simply because the Appeals
Council stamped "untimely" on the request, even if that
designation were patently inaccurate.  While there may be
contexts in which the law is so unforgiving, this is not one.
See *supra*, at 9–11.

Smith's case, as noted above, is also distinct from *Sand-
ers*.  See *supra*, at 8.  *Sanders*, after all, involved the SSA's
denial of a petition for reopening—a second look that the
agency had made available to claimants as a matter of
grace.  See 430 U. S., at 101–102, 107–108.  But Smith is
not seeking a second look at an already-final denial; he
argues that he was wrongly prevented from continuing to
pursue his primary claim for benefits.  That primary
claim, meanwhile, is indeed a matter of statutory entitle-

ment.  See §405(b).

*Amicus* also emphasizes that the SSA handles a large volume of claims, such that a decision providing for greater judicial review could risk a flood of litigation.  That result seems unlikely for a few reasons.  First, the number of Appeals Council untimeliness dismissals is comparatively small—something on the order of 2,500 dismissals out of 160,000 dispositions per year.[18]  Second, the interpretation that Smith and the Government urge has been the law since 1983 in the Eleventh Circuit, and the data there do not bear out *amicus*' warning.  See Reply Brief for Respondent 14–15 (collecting statistics).  Third, while *amicus* flags related contexts that could be informed by today's ruling, see Brief for Court-Appointed *Amicus Curiae* 36–40, those issues are not before us.  We therefore do not address them other than to reinforce that such questions must be considered in the light of "the particular administrative scheme at issue."  See *Salfi*, 422 U. S., at 765.  Today's decision, therefore, hardly knocks loose a line of dominoes.

Finally, *amicus* argues that the meaning of §405(g) is ambiguous and that the SSA's longstanding interpretation of §405(g)—prior to its changed position during the pendency of this case—is entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).  The Government and Smith maintain that the statute unambiguously supports the Government's new position, and Smith further asserts that deference is inappropriate where the Government itself has rejected the interpretation in question in its filings.

We need not decide whether the statute is unambiguous

——————
[18] See Brief for Respondent 43, n. 17 (number of timeliness dismissals); SSA, Annual Statistical Supplement 2018 (Table 2.F11) (number of dispositions), https://www.ssa.gov/policy/docs/statcomps/supplement/2018/2f8-2f11.pdf.

or what to do with the curious situation of an *amicus curiae* seeking deference for an interpretation that the Government's briefing rejects. *Chevron* deference "'is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.'" *King* v. *Burwell*, 576 U. S. ___, ___ (2015) (slip op., at 8). The scope of judicial review, meanwhile, is hardly the kind of question that the Court presumes that Congress implicitly delegated to an agency.

Indeed, roughly six years after *Chevron* was decided, the Court declined to give *Chevron* deference to the Secretary of Labor's interpretation of a federal statute that would have foreclosed private rights of action under certain circumstances. See *Adams Fruit Co.* v. *Barrett*, 494 U. S. 638, 649–650 (1990). As the Court explained, Congress' having created "a role for the Department of Labor in administering the statute" did "not empower the Secretary to regulate the scope of the judicial power vested by the statute." *Id.*, at 650. Rather, "[a]lthough agency determinations within the scope of delegated authority are entitled to deference, it is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction.'" *Ibid.* Here, too, while Congress has empowered the SSA to create a scheme of administrative exhaustion, see *Sims*, 530 U. S., at 106, Congress did not delegate to the SSA the power to determine "the scope of the judicial power vested by" §405(g) or to determine conclusively when its dictates are satisfied. *Adams Fruit Co.*, 494 U. S., at 650. Consequently, having concluded that Smith and the Government have the better reading of §405(g), we need go no further.

## IV

Although they agree that §405(g) permits judicial review of the Appeals Council's dismissal in this case, Smith and the Government disagree somewhat about the scope of

review on remand.[19]  Smith argues that if a reviewing court disagrees with the procedural ground for dismissal, it can then proceed directly to the merits, while the Government argues that the proper step in such a case would be to remand. We largely agree with the Government.

To be sure, there would be jurisdiction for a federal court to proceed to the merits in the way that Smith avers. For one, as noted above, exhaustion itself is not a jurisdictional prerequisite. See *supra*, at 5–6.  Moreover, §405(g) states that a reviewing "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"—a broad grant of authority that reflects the high "degree of direct interaction between a federal court and an administrative agency" envisioned by §405(g).  *Hudson*, 490 U. S., at 885.  In short, there is no jurisdictional bar to a court's reaching the merits.

Fundamental principles of administrative law, however, teach that a federal court generally goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question.  See, *e.g.*, *INS* v. *Orlando Ventura*, 537 U. S. 12, 16, 18 (2002) (*per curiam*); *ICC* v. *Locomotive Engineers*, 482 U. S. 270, 283 (1987); cf. *SEC* v. *Chenery Corp.*, 318 U. S. 80, 88 (1943) ("For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency").  The Court's cases discussing exhaustion in the Social Security context confirm the

————————

[19] The parties agree, as do we, on the standard of review: abuse of discretion as to the overall conclusion, and "substantial evidence" "as to any fact."  See §405(g); see also Brief for Respondent 43–44; Tr. of Oral Arg. 5; cf. *Bowen* v. *City of New York*, 476 U. S. 467, 483 (1986) ("Ordinarily, the Secretary has discretion to decide when to waive the exhaustion requirement").

prudence of applying this general principle here, where the agency's final decisionmaker has not had a chance to address the merits at all.[20] See *City of New York*, 476 U. S., at 485 ("Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context"); *Salfi*, 422 U. S., at 765 (explaining that exhaustion serves to "preven[t] premature interference with agency processes" and to give the agency "an opportunity to correct its own errors," "to afford the parties and the courts the benefit of its experience and expertise," and to produce "a record which is adequate for judicial review"). Accordingly, in an ordinary case, a court should restrict its review to the procedural ground that was the basis for the Appeals Council dismissal and (if necessary) allow the agency to address any residual substantive questions in the first instance.[21]

## V

We hold that where the SSA's Appeals Council has dismissed a request for review as untimely after a claimant has obtained a hearing from an ALJ on the merits, that dismissal qualifies as a "final decision . . . made after a hearing" within the meaning of §405(g). The judgment of the United States Court of Appeals for the Sixth Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[20] We make no statement, by contrast, regarding the applicability of this line of cases to situations in which the Appeals Council has had a chance to address the merits. Cf. *Sims* v. *Apfel*, 530 U. S. 103, 110–112 (2000) (plurality opinion) (discussing why the inquisitorial nature of SSA proceedings counsels against imposing an issue-exhaustion requirement).

[21] By the same token, remand may be forgone in rarer cases, such as where the Government joins the claimant in asking the court to reach the merits or where remand would serve no meaningful purpose.