**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2471

_____

MARTIN ORR,
Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-17-cv-01665)
District Judge: Honorable John E. Jones, III

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2020

Before: HARDIMAN, PORTER, and PHIPPS, *Circuit Judges*.

(Opinion filed: March 2, 2020)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This case represents the culmination of a succession of Martin Orr's attempts to qualify for benefits from the Social Security Administration ("SSA") following a motorcycle accident in October 2011. Orr claims that after that accident, he was left with physical and mental disabilities that render him unable to work. Orr sought Disability Insurance Benefits and Supplemental Security Income from SSA, and those requests were denied at every level of SSA's administrative adjudicatory process. The District Court upheld SSA's determinations, and for the reasons below, we will affirm the judgment of the District Court.

I

Orr's applications for Disability Insurance Benefits and Supplemental Security Income did not prevail at the administrative level. *See generally Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (articulating the four stages of adminstrative review as an initial eligibility determination, reconsideration, a formal hearing, and review by the Appeals Council); 20 C.F.R. § 416.1400(a) (2015). SSA initially denied his applications. And while it is unclear from the record whether Orr sought reconsideration, he did elect for review by an Administrative Law Judge ("ALJ"), an officer appointed by SSA to conduct administrative hearings. *See* 5 U.S.C. § 3105; *Cirko ex rel. Cirko v. Comm'r Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020). After receiving evidence and hearing testimony from Orr and a vocational expert, the ALJ denied Orr's benefit requests. Unsatisfied with the results of that formal hearing, Orr requested further review by the Appeals Council, an administrative appellate body. *See generally Smith*, 139 S. Ct. at 1772. The Appeals Council denied his request for review.

2

Without any success at the administrative level, Orr initiated a civil action in District Court to challenge SSA's determinations. After filing an answer, SSA moved to remand Orr's case – to send it back to the administrative process for reevaluation. Orr did not oppose a remand, and the District Court granted that motion.

On remand, the ALJ held another formal hearing. There, the ALJ received additional evidence and heard supplemental testimony from several witnesses, including a psychologist, a second vocational expert, and Orr himself. Considering the combined record from both formal hearings, the ALJ again denied Orr's applications. Orr administratively appealed, and the Appeals Council declined review.

Having twice run the gamut of the agency administrative process, Orr returned to District Court to contest SSA's denial of his applications. With jurisdiction over the controversy, *see* 42 U.S.C. § 405(g), the District Court adopted a magistrate judge's Report and Recommendation to affirm the denial of Disability Insurance Benefits and Supplemental Security Income, notwithstanding Orr's objections.

Orr timely appealed that District Court judgment, bringing him within the jurisdiction of this Court. *See* 28 U.S.C. § 1291. He argues on appeal that in denying his applications, the ALJ committed reversible error on nearly a dozen factual determinations.

II

The benefits that Orr requests – Disability Insurance Benefits and Supplemental Security Income – are governed by similar statutory requirements. In general, those benefits are available to persons who cannot engage in substantial gainful activity due to a physical or mental impairment lasting without interruption for more than 12 months.

3

*See* 42 U.S.C. § 423(a)(1), (d) (2011) (Disability Insurance Benefits); *id.*

§ 1382c(a)(3)(A) (2011) (Supplemental Security Income).

To implement those statutory requirements, SSA promulgated regulations, which

it is legally bound to follow. The regulations for Disability Insurance Benefits and

Supplemental Security Income rely on the same five-step process for determining

whether an applicant qualifies as disabled under either program. Those steps may be

summarized as the following:

(i)     Evaluation of whether the applicant is performing substantial gainful
        activity (if so, then the applicant is not disabled; if not, the applicant
        proceeds to the next step);

(ii)    Determination of whether the applicant has a severe medical
        impairment that meets a durational requirement (if not, then the
        applicant is not disabled; if so, the applicant proceeds to the next
        step);

(iii)   Determination of whether the applicant has an impairment that meets
        or equals a listed impairment that meets a durational requirement (*if
        so, then the applicant is disabled*; if not, the applicant proceeds to
        the next step);

(iv)    Determination of whether the applicant can return to past relevant
        work, considering the applicant's residual functional capacity (if so,
        then the applicant is not disabled; if not, the applicant proceeds to
        the next step);

(v)     Determination of whether the applicant can adjust to perform other
        work (if so, the applicant is not disabled; *if not, then the applicant is
        disabled*).

*See* 20 C.F.R. § 404.1520(a)(4) (2011) (Disability Insurance Benefits); *id.*

§ 416.920(a)(4) (2011) (Supplemental Security Income). As that summary makes clear,

the steps are largely sequential, but an applicant may be deemed disabled at only Steps

Three and Five.

4

In this case, the ALJ evaluated Orr's application under that five-step process. After determining that Orr satisfied Steps One and Two, the ALJ found that Orr did not have an impairment that met or equaled a listing for disability under Step Three. The ALJ then proceeded to Step Four and determined that Orr's residual functioning capacity did not allow his return to past relevant work. Finally, at Step Five, the ALJ concluded that Orr could perform other work and therefore did not qualify for benefits.

Orr disagrees with the ALJ's conclusions at Steps Two, Three and Five. He argues that the ALJ improperly rejected a number of his claimed impairments at Step Two and misapplied Steps Three and Five.

## III

Under the Social Security Act, federal courts review SSA's factual findings for substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). That tolerant standard for fact-finding requires only that the administrative record contain sufficient evidence for a reasonable mind to "accept as adequate to support a conclusion." *Id.* at 1154 (citation omitted). To satisfy that standard does not require a preponderance of the evidence; in fact, a preponderance of the evidence may support a conclusion different than SSA's. *See Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). Under the substantial evidence standard of review, Orr's appeal fails.

## A

Orr starts by challenging the ALJ's determination at Step Two. He claims that the ALJ erred in determining that certain of his impairments were not severe. But even without finding that all of Orr's impairments were severe, the ALJ concluded that Orr still satisfied Step Two. The ALJ then proceeded to Step Three. Orr cannot overcome

5

that fact: because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome. And without more, Orr provides no valid basis for remand. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (explaining that, under C*henery* principles, remand is not required when it would be "an idle and useless formality").[1]

B

Orr next claims that the ALJ erred by not finding him disabled at Step Three. To qualify for benefits at Step Three, an applicant must demonstrate that his impairment meets or equals a listing in an appendix to SSA's regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* Part 404, Subpart P, App. 1 (2011). Orr claims that he satisfies two such listings: Listing 12.02 (for neurocognitive disorders) and Listing 12.05 (for intellectual disorder).

*Listing 12.02*

As Listing 12.02 (for neurocognitive disorders) existed at the time of Orr's application, an applicant could meet or equal its requirements in two ways. *See* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.02. The first option was to satisfy both Subsections A and B of the listing. The second option was to meet the requirements of

---

[1] *See also Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) ("Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Any alleged error [at Step Two] is therefore harmless and cannot be the basis for a remand."); *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (holding that the ALJ's finding that the applicant "suffered from severe impairments[,]" without more, "was all the ALJ was required to do" at Step Two). *But see Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (holding that erroneously finding an impairment to be non-severe is not harmless error, even where the applicant prevailed at Step Two on other grounds).

6

Subsection C. The ALJ determined that Orr did not satisfy any of those three subsections. Orr disagrees and argues that he meets both Subsections A and B.

Regardless of whether he could prevail with his argument on Subsection A, Orr would still need to satisfy Subsection B. That subsection requires him to meet at least two of four articulated factors, and substantial evidence supports the ALJ's determination that he does not. *See id.* 12.02(B).

As to the first factor (marked restrictions of daily living activities), *see id.* 12.02(B)(1), the ALJ found that Orr had mild, but not marked, restrictions or difficulties in daily living. That finding is supported by substantial evidence because although Orr did not do any chores, he could perform his own self-care.

For the second factor (marked difficulties in maintaining social functioning), *see id.* 12.02(B)(2), the ALJ found mild, but not marked, difficulties in this respect. Substantial evidence supports that conclusion because, although Orr did not call anyone or go anywhere, he had no problems getting along with family, friends, and others.

For the third factor (marked difficulties in maintaining concentration, persistence, or pace), *see id.* 12.02(B)(3), the ALJ found that Orr had moderate, but not marked, difficulties with concentration, persistence, and pace. Substantial evidence supports that finding because Orr spent time online searching for auto parts; he read magazines; he watched a lot of politics and history on television; and he got six to seven hours of sleep a night, despite being awakened by discomfort in his leg.

Orr does not dispute the ALJ's findings that he did not meet the fourth factor (repeated episodes of decompensation, each of extended duration), *see id.* 12.02(B)(4).

7

And with substantial evidence that Orr did not meet at least two of the Subsection B factors, the ALJ did not err in finding that Orr did not meet or equal Listing 12.02.

*Listing 12.05*

Orr also challenges the ALJ's determination that he did not meet or equal Listing 12.05 (for intellectual disorder). That listing identifies several criteria for intellectual disorder. *See* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.05 (2011). But those criteria must have onset before an applicant reaches age 22. *See id.* Orr concedes that he did not meet any of them before age 22; he was 37 on the onset date. Therefore, substantial evidence supports the ALJ's conclusion that Orr did not satisfy Listing 12.05.

C

Although he did not qualify at Step Three as disabled, Orr still could have done so by satisfying both Steps Four and Five. The ALJ determined that Orr met Step Four because his residual functional capacity did not enable him to return to past relevant work. At Step Five, the burden of proof shifts to SSA, *see Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005), and to deny an applicant benefits, SSA must prove that the applicant can adjust to other work. *See* 20 C.F.R. § 404.1520(a)(4)(v) (Disability Insurance Benefits); *id.* § 416.920(a)(4)(v) (Supplemental Security Income); *see also* § 404.1560(c). The ALJ determined that SSA met that burden because although Orr could not perform the full range of or substantially all requirements for "medium work," his residual functional capacity enabled him to perform a significant number of jobs that exist in the national economy. *See id.* §§ 404.1567(c) (2011), 416.967(c) (2011). Thus, Orr was not disabled.

8

Substantial evidence supports the ALJ's determination.  Orr himself testified that he went up and down stairs about four times per day; that he could lift 40 pounds; that he picked shoes off the floor; that his medication was effective in managing his pain; that his medication caused no side effects; that he did not use the cane in his home; and that he could stand, sit, and walk.  Orr's testimony and medical evidence also demonstrate his then-abilities to perform unskilled work in a low-stress environment.  He could carry up to 50 pounds occasionally and 25 pounds frequently; walk or stand for up to six hours in an eight-hour day; sit for up to six hours in an eight-hour day; and occasionally climb, balance, or stoop.  *See* 20 C.F.R. § 404.1567(c) (2011) (defining "medium work" as the ability to lift up to 50 pounds occasionally and lift or carry up to 25 pounds frequently).  A psychologist also credibly testified that Orr had a normal mental status without limitations.

In fairness, the ALJ recognized that Orr faced some limitations.  Orr could not use ladders, kneel, crouch, crawl, or use his right lower leg for pushing or pulling.  Similarly, the ALJ determined that Orr must avoid vibrational hazards.

On balance, however, the ALJ found that Orr could work unskilled, low-stress jobs that entail occasional decision-making and have only occasional changes.  Substantial evidence supports those findings.

\* \* \*

For the foregoing reasons, we will affirm the judgment of the District Court.