# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10934

———————

Baylor All Saints Medical Center, *doing business as* Baylor Scott & White All Saints Medical Center of Fort Worth; Baylor Medical Center of Irving, *doing business as* Baylor Scott & White Medical Center of Irving; Baylor Medical Center at Waxahachie, *doing business as* Baylor Scott & White Medical Center of Waxahachie; Baylor Scott & White Medical Center of Centennial; Baylor Scott & White Medical Centers of Greater North Texas, *doing business as* Baylor Scott & White Medical Center of McKinney; Baylor University Medical Center; Covenant Medical Center; El Paso County Hospital District, *doing business as* University Medical Center of El Paso; Hillcrest Baptist Medical Center, *doing business as* Baylor Scott & White Medical Center of Hillcrest; Hunt Memorial Hospital District, *doing business as* Hunt Regional Healthcare; Lake Pointe Operating Company, L.L.C., *doing business as* Baylor Scott & White Medical Center of Lake Pointe; Scott & White Hospital of College Station, *doing business as* Baylor Scott & White Medical Center of College Station; Scott & White Hospital of Marble Falls, *doing business as* Baylor Scott & White Medical Center of Marble Falls; Scott & White Memorial Hospital, *doing business as* Baylor Scott & White Medical Center of Temple,

*Plaintiffs—Appellees*,

*versus*

ROBERT F. KENNEDY, JR., *Secretary, U.S. Department of Health and Human Services*,

Defendant—Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-432

_____

Before JONES, STEWART, and RAMIREZ, *Circuit Judges*.

EDITH JONES, *Circuit Judge*:

After the Secretary of Health and Human Services handed down a regulation that penalizes hospitals in states that have pursued alternatives to Medicaid expansion, a group of Texas hospitals brought this suit to vacate the regulation. Because the district court did not have jurisdiction to hear a case that arose outside of the Medicare channeling scheme, the district court's judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

## I.

Hospitals that treat a disproportionately high number of low-income patients may recover Disproportionate Share Hospital ("DSH") payments in addition to their standard Medicare reimbursement. 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). The size of a DSH payment depends in part on the percentage of a hospital's patient days spent treating patients "eligible for medical assistance under a State plan approved" under the Medicaid statute. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). This calculation is called the Medicaid fraction. The numerator "is the number of patient days attributable to individuals eligible for Medicaid and not entitled to Medicare Part A, and the denominator is 'the total number of the hospital's patient days.'" *Battle Creek Health Sys. v. Kennedy*, 151 F.4th 464, 467 (D.C. Cir. 2025) (quoting 42

2

No. 24-10934

U.S.C. § 1395ww(d)(5)(F)(vi)(II)). Under this statutory scheme, a higher percentage of Medicaid-eligible patients corresponds with a higher DSH payment amount.

The Department of Health and Human Services works with Medicare Administrative Contractors to calculate DSH payments for hospitals. In performing these calculations, a contractor relies on annual cost reports submitted by hospitals. The contractor then makes a "final determination" on the amount of the DSH payment and sends the hospital a Notice of Program Reimbursement. 42 C.F.R. §§ 405.1801(b), 405.1803(a).

If a hospital is "dissatisfied with a final determination" regarding its DSH payment amount, it can appeal to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a)(1)(A)(ii). At that hearing, the hospital can challenge the calculation of the DSH payment and the regulations used to determine the calculation. 42 C.F.R. § 405.1835. If the PRRB is not able to rule on whether a regulation is lawful, the hospital can seek judicial review. 42 U.S.C. § 1395oo(f)(1). Additionally, the PRRB can certify regulatory challenges for expedited judicial review. 42 C.F.R. § 405.1842.

Prior to the August 2023 rule in question, two groups of people counted as Medicaid-eligible patients for purposes of DSH calculation. First, people who were "eligible for medical assistance under a State" Medicaid plan were counted. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Second, people who were not eligible for a Medicaid plan but "receive[d] benefits under a demonstration project" were counted for DSH calculation purposes. *Id.* Demonstration projects are state programs that confer benefits on a group of patients not otherwise eligible for Medicaid. Aside from a state's normal Medicaid plan, the Secretary of Health and Human Services may authorize a state to use Medicaid funding for demonstration projects

that "assist in promoting the objectives of [Medicaid]." 42 U.S.C. § 1315(a). Pursuant to this statute, Texas operates a demonstration project which creates a pool of funds called an "uncompensated care pool." When a hospital treats a patient not eligible for Medicaid, the state allocates to that hospital a portion of the funds in the uncompensated care pool. The Secretary approved Texas's demonstration project.

In August 2023, Secretary of Health and Human Services Xavier Becerra purported to clarify how demonstration projects are considered in DSH calculations by issuing a new regulation excluding patients receiving benefits under a funding pool demonstration project from the calculation. 88 Fed. Reg. 58,640 (Aug. 28, 2023); 42 C.F.R. § 412.106(b)(4)(iii). As a result of this regulation, Texas hospitals risk losing out on two programs. First, they face the possibility of their DSH payments being reduced to the tune of more than $10 million per year. Second, they may become ineligible for the 340B drug discount program. *See* 42 U.S.C. § 256b. Under the program, covered entities can purchase drugs from manufacturers at a discounted price. One way to calculate a hospital's eligibility for the 340B program is based on the hospital's DSH percentage. 42 U.S.C. § 256b(a)(4)(L)(ii), (a)(4)(O). If a hospital's DSH percentage falls below the statutory threshold because of the Secretary's new regulation, it will become immediately disqualified from receiving discounts under the 340B program. Once disqualified, a hospital cannot later recoup discounts it would have received, even if the hospital later proves that the initial eligibility decision was incorrect.

The plaintiffs, a group of Texas hospitals, sought to preemptively enjoin the Secretary from applying the new rule to future DSH calculations. They filed an appeal with the PRRB arguing that the regulation was unlawful under this court's decision in *Forrest General Hospital v. Azar*, 926 F.3d 221, 229 (5th Cir. 2019). The PRRB determined it did not have jurisdiction to

even hear the case because the August 2023 rule did not constitute a final determination regarding a hospital's payment amount that is appealable to the PRRB. The plaintiffs then filed suit in the Northern District of Texas. The district court reached the merits of the case, granted summary judgment for the plaintiff hospitals, and vacated the rule.

The Secretary of Health and Human Services timely appealed.

## II.

Jurisdictional issues receive *de novo* review. *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018). "The proponent of jurisdiction has the burden of establishing it." *Id.* This court's "review of a summary-judgment grant is *de novo*, 'applying the same standard as the district court.'" *Forrest Gen. Hosp.*, 926 F.3d at 227 (quoting *Moon v. City of El Paso*, 906 F.3d 352, 357 (5th Cir. 2018)).

## III.

### a.

Congress has divested courts of subject-matter jurisdiction on any claim arising under the Medicare statute except as provided in 42 U.S.C. § 405(g), which is the "sole avenue for judicial review for all 'claim[s] arising under'" Medicare. *Heckler v. Ringer*, 466 U.S. 602, 615, 104 S. Ct. 2013, 2021 (1984) (quoting 42 U.S.C. § 405(h)); 42 U.S.C. § 1395ii (incorporating portions of 42 U.S.C. § 405 into the Medicare statute). If a claim arises under the Medicare statute, it is subject to a "reticulated statutory scheme," *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 675, 106 S. Ct. 2133, 2138 (1986), that restricts courts from adjudicating cases prior to the Secretary making a "final decision . . . made after a hearing to which he was a party." 42 U.S.C. § 405(g). To count as a "final decision," an agency action must meet two criteria. First, there is a "jurisdictional

requirement that claims be presented to the agency." *Smith v. Berryhill*, 587 U.S. 471, 478, 139 S. Ct. 1765, 1773 (2019) (internal quotation marks omitted). Second, there is a waivable "requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S. Ct. 893, 900 (1976)).

The district court lacked jurisdiction because the hospitals never presented their claim to the agency. *Id.* The presentment requirement is nonwaivable. *Heckler*, 466 U.S. at 617, 104 S. Ct. at 2023. For a claim to be presented to an agency, the agency must have an "opportunity to rule on a concrete claim for reimbursement." *Id.* at 622, 104 S. Ct. at 2025. Even though the hospitals are "not seeking the immediate payment of benefits," they are seeking to modify a regulation that bears directly on their "right to future payments." *Id.* at 621, 104 S. Ct. at 2025. Despite the creative framing of the claim, it cannot "undercut Congress' carefully crafted scheme for administering the Medicare Act." *Id.* If the hospitals wish to present a claim attacking a regulation arising under the Medicare Act, they must do so via the channels prescribed by Congress. Here, Congress chose to route "virtually all legal attacks" through the agency's process first so that the agency has "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13, 120 S. Ct. 1084, 1093 (2000).

The channeling statute limits judicial review to a "final decision of [the Secretary] made after a hearing to which he was a party." 42 U.S.C. § 405(g). Hospitals receive the Secretary's final decision as to "their final reimbursement amounts—including the final DSH adjustment amount—when they receive their [Notice of Program Reimbursement]." *Battle Creek*, 151 F.4th at 467. Once a hospital submits its report, its DSH payment is calculated with respect to "the cost reporting period" in

question. 42 U.S.C. § 1395ww(d)(5)(F). Then, "[f]inal payment determinations are made at the time of cost report settlement." 42 C.F.R. § 412.106(i)(2). Therefore, the presentment requirement cannot be fulfilled before a hospital submits its cost report to a Medicare Administrative Contractor.

If a hospital "is dissatisfied with a final determination," it can appeal the decision to the PRRB.[1] 42 U.S.C. § 1395oo(a)(1)(A)(ii). If a hospital is still dissatisfied after PRRB review, it can "obtain judicial review of any final decision of the Board." 42 U.S.C. § 1395oo(f)(1). If part of a hospital's challenge to a Medicare claim "involves a question of law or regulations" and the PRRB "is without authority to decide the question," the PRRB can certify the issue for judicial review. 42 U.S.C. § 1395oo(f)(1). Notably, to even "obtain a hearing" from the PRRB, a provider must first have "submitted such reports within such time as the Secretary may require in order to make payment." 42 U.S.C. § 1395oo(a). The hospitals did no such thing. Therefore, the PRRB correctly determined that it did not have jurisdiction over the hospitals' original claim because the hospitals were not challenging a "final determination" subject to appeal.

Because the hospitals failed to present a claim to the agency, the district court had no jurisdiction to hear the case. *Smith*, 587 U.S. at 478, 139 S. Ct. at 1773.

––––––––––––––––––––––

[1] The hospitals argue that requiring them to exhaust the administrative remedies offered by the PRRB would be fruitless because the PRRB does not have the power to vacate the regulation in question. To be sure, a court may waive the administrative exhaustion requirement if administrative remedies would be inadequate. *Info. Res., Inc. v. United States*, 950 F.2d 1122, 1126 (5th Cir. 1992). However, the court does not reach the issue of whether administrative exhaustion is required because the case does not satisfy the "jurisdictional requirement that claims be presented to the agency." *Smith*, 587 U.S. at 478, 139 S. Ct. at 1773 (internal quotation marks omitted).

b.

In the alternative, the hospitals argue that their claim does not arise under Medicare, rendering the Medicare channeling requirement inapplicable. They argue that their claim instead arises under the Public Health Service Act, which establishes the 340B drug discount benefits threatened by the regulation. *See* 42 U.S.C. § 256b. Hospitals can qualify for the 340B drug program in a myriad of ways. *See* 42 U.S.C. § 256b(a)(4). One such way is if the hospital's "disproportionate share adjustment percentage . . . [is] greater than 11.75 percent." 42 U.S.C. § 2156b(a)(4)(L)(ii). At most, four of the fourteen plaintiff hospitals may lose their eligibility for the 340B program because of how the regulation modifies the calculation of the DSH percentage.

Claims arise under Medicare when "'both the standing and the substantive basis for the presentation of' a claim" is the Medicare statute. *Ill. Council*, 529 U.S. at 12, 120 S. Ct. at 1093 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 761, 95 S. Ct. 2457, 2464 (1975)). The hospitals' argument is unpersuasive because they are challenging a Medicare regulation which depends on variables enumerated in the Medicare statute. While the Medicare regulation has downstream effects on the 340B program, the Medicare statute "provides both the standing and the substantive basis for the presentation of their . . . contentions." *Salfi*, 422 U.S. at 760-61, 95 S. Ct. at 2464. In *Salfi*, the Court considered a challenge to the Social Security Act where "constitutional arguments [were] critical to [the] complaint." *Id*. at 760, 95 S. Ct. at 2464. Despite the critical nature of the constitutional arguments, the Court held that the claim arose under the Social Security Act. *Id*. Likewise, the 340B arguments may be critical to the hospitals' complaint. However, it is the Medicare statute that provides the standing and substantive basis for the case because the hospitals are challenging a Medicare regulation used to calculate a Medicare reimbursement. As in

8

*Salfi*, the fact that the case implicates two different laws is not sufficient to exempt the hospitals from the Medicare channeling requirement. *Id.* Notably, the only thing the hospitals are challenging is the method of calculating the Medicaid fraction. Methods for calculating the fraction are solely creatures of the Medicare statute. The hospitals do not advance any separate claims arising under the 340B program, such as challenges to the statutory provision setting the DSH percentage threshold for participation in the program. *See* 42 U.S.C. § 256b(a)(4)(L)(ii). Therefore, the hospitals' claim arises under the Medicare statute and is subject to the channeling requirement.

The hospitals also argue that an exception to Medicare channeling applies. Channeling is not required if it would result in a "*complete* preclusion of judicial review." *Ill. Council*, 529 U.S. at 23, 120 S. Ct. at 1098 (emphasis in original). The hospitals argue that the channeling requirement imposes a complete preclusion of judicial review in this case because four of them might lose their 340B eligibility. Under the 340B program, a hospital loses eligibility for the 340B program the moment that its cost report with a below-threshold DSH percentage is filed. The hospitals allege that this represents irreparable harm since the 340B program contains no provision for retroactive recovery if it is later determined that the initial DSH percentage was calculated incorrectly. While unfortunate, such "individual, delay-related hardship" is part of the cost of channeling. *Id.* at 13, 120 S. Ct. at 1093. "In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations . . . paying this price may seem justified." *Id.* Even if the hospitals are "prejudiced by that delay" between agency adjudication and court adjudication, "it is not enough" to overcome the strict channeling requirement. *Fam. Rehabilitation*, 886 F.3d at 505. Because the hospitals remain free to challenge DSH reimbursements after

the administrative process is over, they have not suffered a complete preclusion of judicial review. While they may suffer irreparable delay-related costs, such costs are not sufficient to exempt them from the channeling requirement.

For these reasons, the judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.