# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-20185

———————

In the Matter of KENNETH WAYNE BENJAMIN,

    Debtor

KENNETH WAYNE BENJAMIN,

    Appellant

v.

UNITED STATES OF AMERICA, SOCIAL SECURITY ADMINISTRATION,

    Appellee

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

United States Court of Appeals
Fifth Circuit

**FILED**
July 25, 2019

Lyle W. Cayce
Clerk

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

We withdraw our prior opinion, 924 F.3d 180, and substitute the following:

The question presented is whether 42 U.S.C. § 405(h)—which states that no claim arising under the Social Security Act can be brought under 28 U.S.C. §§ 1331 and 1346—also bars bankruptcy courts from exercising their jurisdiction under § 1334 to hear Social Security claims. The district court answered yes, relying on the recodification canon to read into § 405(h) a bar on

No. 18-20185

§ 1334 jurisdiction. But because we follow § 405(h)'s plain text, we answer no and reverse.

## I.

Kenneth Benjamin was the designated beneficiary of his sister's disability benefits. In September 2013, the Social Security Administration ("SSA") notified Benjamin that it had become aware of his sister's return to work. The SSA determined that her benefits had expired in April 2012. But because it did not sever her disability check until September 2013, the SSA would recoup the overpayment, which totaled $19,286.90. Benjamin and his sister requested reconsideration of the overpayment determination and a waiver of overpayment.

Under 20 C.F.R. § 404.506(b), the SSA should not have begun collecting the overpayment until after it had considered Benjamin's waiver request, which it did not do until July 2016. Nonetheless, in August 2014, the SSA sent Benjamin a letter (his sister had died the month before) informing him that it would withhold his full social-security check until the overpayment was recovered. Four days later, Benjamin reached an agreement with the SSA to withhold only $536 a month from him. The SSA recovered roughly $6,000 from Benjamin in this way until September 2015, when, for reasons unknown, it abruptly stopped withholding the money.

Eventually, in July 2016, the SSA turned to Benjamin's request for a waiver of the overpayment, which it denied. Benjamin asked for a personal conference with the SSA to reconsider its decision. After the conference, the SSA again ruled against Benjamin. Benjamin filed a timely appeal to an administrative law judge. The appeal has yet to be decided.

After it denied his waiver request, the SSA resumed withholding $536 a month from Benjamin's social-security check. The burden soon became too much: In May 2017, Benjamin filed for Chapter 7 bankruptcy. He then lodged

No. 18-20185

an adversarial proceeding against the SSA in bankruptcy court. He alleged that the SSA collected $6,000 from him illegally and in violation of its own regulations. He demanded repayment in full. He also demanded the return of the $536 collected from him in May due to the collection's proximity to his bankruptcy filing.[1]

The SSA moved to dismiss Benjamin's claims for lack of subject matter jurisdiction, claiming Benjamin had alleged only regulatory violations, which must first be exhausted through the administrative-appeal process. Even if the court had jurisdiction, the SSA contended that the claims should be dismissed under Rule 12(b)(6). The bankruptcy court granted the SSA's motion to dismiss for "the reasons stated in the [m]otion." Benjamin appealed to the district court, which affirmed on jurisdictional grounds. This appeal followed. The sole issue is whether the bankruptcy court had jurisdiction to hear Benjamin's claims.

## II.

Whether subject matter jurisdiction exists over a given claim is a question we review de novo. *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018). Benjamin has the burden of establishing jurisdiction. *Id.* As this case is at the Rule 12(b)(1) stage, he need only "allege a plausible set of facts establishing jurisdiction." *Id.* (quotation omitted).

---

[1] In his original complaint and throughout his many amended complaints, Benjamin alleged other violations and eventually requested over $150,000 in additional relief, citing injuries such as emotional distress. On appeal, however, Benjamin challenges only the dismissal of the claims related to the $6,000 withheld from 2014 through 2015 and the $536 withheld in May 2017. His failure to adequately argue the other claims in his brief renders them abandoned. *See, e.g.*, *DeLoach v. Bryan*, 144 F. App'x 377, 378 (5th Cir. 2005) (per curiam).

No. 18-20185

III.

Under 42 U.S.C. § 405(h), federal courts' ability to hear claims arising under the Social Security Act is largely curtailed:

> [1] The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. [2] No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)]. [3] No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [Title II of the Social Security Act].[2]

The Supreme Court has held that § 405(h) "purports to make exclusive the judicial review method set forth in § 405(g)" for claims falling within its scope. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000). It does so by two means (though the means are listed in inverse order). The third sentence strips district courts of the most obvious sources of federal jurisdiction for any claims arising under Title II of the Social Security Act. The second sentence then channels a certain class of those claims into § 405(g), which, in turn, grants jurisdiction to district courts to review final agency decisions made after a hearing.[3] 42 U.S.C. § 405(g).

The question before us is whether § 405(h)'s third sentence bars bankruptcy courts from relying on their general bankruptcy jurisdictional grant found at 28 U.S.C. § 1334(b) to hear Benjamin's claims. The district court answered yes to this question. We disagree.

---

[2] "Title II contains the old-age, survivors, and disability insurance programs codified at 42 U.S.C. § 401 *et seq.*" *Weinberger v. Salfi*, 422 U.S. 749, 760 n.7 (1975).

[3] Ordinarily, this means that a plaintiff must run the gauntlet of the SSA's four-level-review process, which culminates in a decision from the Appeals Council. *See generally* 20 C.F.R. § 404.900 (describing the administrative process).

No. 18-20185

A.

The third sentence of § 405(h) states that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [Title II of the Social Security Act]." Benjamin would have us read that sentence for what it says: as a bar on jurisdiction under §§ 1331 and 1346[4]—but not under § 1334. The SSA, in contrast, asks us to interpret the sentence as barring § 1334 jurisdiction as well. This is the position the district court adopted, and it is a position that has garnered the support of the Third, Seventh, Eighth, and Eleventh Circuits. Only the Ninth Circuit has adopted Benjamin's reading.

The Seventh Circuit was the first court to read § 405(h)'s third sentence as including a hidden jurisdictional bar. In *Bodimetric Health Services Inc. v. Aetna Life & Casualty*, the court considered whether the third sentence stripped courts of their § 1332 diversity jurisdiction to hear claims arising under the Medicare Act.[5] 903 F.2d 480, 488–90 (7th Cir. 1990). The court began by reviewing the history of § 405(h). *Id.* at 488. As originally enacted in 1939, it barred all actions brought under 28 U.S.C. § 41, which at the time contained virtually all the jurisdictional grants to the federal courts—including the diversity grant—now scattered throughout Title 28. *Id.* (citing Social Security Act Amendments of 1939, Pub. L. No. 76-379, § 205(h), 53 Stat. 1360, 1371 (1939)).[6] In 1976, the Office of Law Revision Counsel revised § 405(h) to its

---

[4] These provisions grant federal courts subject matter jurisdiction over federal questions and certain cases in which the United States is a defendant. *See* 28 U.S.C. §§ 1331, 1346.

[5] Section 405(h) is made applicable to the Medicare Act by 42 U.S.C. § 1395ii.

[6] The Social Security Act Amendments of 1939 barred actions under "section 24 of the Judicial Code of the United States." Pub. L. No. 76-379, § 205(h), 53 Stat. 1360, 1371 (1939). But section 24 was codified at 28 U.S.C. § 41. *See id.*; 28 U.S.C. § 41 (1940).

current form, and in 1984, Congress adopted the revised language by passing the Deficit Reduction Act ("DRA"). *Id.* at 488–89 (citing Pub. L. No. 98-369, § 2663(a)(4)(D), 98 Stat. 494, 1162 (1984)). The revision was in a section entitled "Technical Corrections." *Id.* at 489 (quoting 98 Stat. at 1156). In a neighboring section, Congress instructed that none of the technical changes "shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before [their effective] date." *Id.* (quoting 98 Stat. at 1171–72).

This language, the Seventh Circuit said, clearly expressed Congress's "intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions." *Id.* The Third and Eighth Circuits adopted the Seventh Circuit's reasoning to reach the same conclusion. *See Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 346–47 (3d Cir. 2012); *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998).

In *In re Bayou Shores SNF, LLC*, the Eleventh Circuit built on this body of caselaw by deciding that § 405(h)'s third sentence barred bankruptcy jurisdiction under § 1334. 828 F.3d 1297, 1314 (11th Cir. 2016). It too relied on *Bodimetric* to hold that "the 1984 amendments to § 405(h) were a codification and not a substantive change." *Id.* at 1314. The court argued that its conclusion was supported by the recodification canon, which states that "when legislatures codify the law, courts should presume that no substantive change was intended absent a clear indication otherwise." *Id.* In applying this canon to § 405(h), it reasoned that the Office of Law Revision Counsel must have made an error by not including the full range of jurisdictional grants listed under the prior version. *Id.* at 1319. It was not concerned that "Congress enacted the error into positive law." *Id.* There was no evidence, the court said,

6

No. 18-20185

that Congress had clearly expressed an intention to change decades of social-security policy and bankruptcy law by enacting the DRA: "[I]f Congress intended such an important expansion of bankruptcy court jurisdiction to be enacted in a recodification, one would expect to find some indication in the statute or legislative history stating as much." *Id.*

The only circuit to read § 405(h)'s third sentence according to its plain text is the Ninth Circuit. It has held that § 405(h) "only bars actions under 28 U.S.C. §§ 1331 and 1346; it in no way prohibits an assertion of jurisdiction under section 1334." *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1155 (9th Cir. 1991).[7]

We must now take sides in this circuit split. With respect to the majority of our sister circuits, we reject the non-textual approach exemplified by the Eleventh Circuit and join the Ninth Circuit in applying the third sentence's plain meaning—a meaning that, everyone agrees, does not bar § 1334 jurisdiction.

While the recodification canon is useful in some instances, it only applies—as the Eleventh Circuit noted—in the absence of a clear indication from Congress that it intended to change the law's substance. *See In re Bayou Shores SNF, LLC*, 828 F.3d at 1314. While the Eleventh Circuit could not find any such indication, it overlooked the most obvious source of congressional intent—the actual words of § 405(h)'s third sentence. *See Hotze v. Burwell*, 784 F.3d 984, 997 (5th Cir. 2015) (noting that "the best evidence of Congress's

---

[7] The SSA argues that the Ninth Circuit has retreated from this case. It cites to *Kaiser v. Blue Cross of California* for support. 347 F.3d 1107 (9th Cir. 2003). In *Kaiser*, the court held that § 405(h)'s third sentence barred diversity actions under § 1332. *Id.* at 1115. Interestingly, *Kaiser* was written by the same judge, sitting by designation, who wrote *Bodimetric*. He did not acknowledge the Ninth Circuit's contrary precedent in *Town & Country*. The Ninth Circuit has decided to live with this tension in its precedent, holding that *Town & Country* continues to apply to § 1334 while *Kaiser* applies to § 1332. *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 n.11 (9th Cir. 2010).

intent is the statutory text" (quotation omitted)); *see also United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 492 (5th Cir. 2017). "The new text is the law, and where it clearly makes a change, that governs. This is so even when the legislative history . . . expresses the intent to make no change." A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 40, p. 257 (2012). This principle applies even if the statute has a general accompanying instruction eschewing any substantive changes: "When the general assertion of no change is contradicted by an unquestionable change in a specific provision, the specific will control over the general." *Id.* at 259. By failing to recognize the importance of the third sentence's words, the Eleventh Circuit not only misapplied the recodification canon; it also violated another bedrock canon of statutory interpretation: the *expressio unius* canon. *See id.* at § 10, p. 107 ("The expression of one thing implies the exclusion of others . . . .").

The Supreme Court's opinion in *United States v. Wells* is a good example of how to correctly apply the clear-indication exception to the recodification canon. 519 U.S. 482 (1997). *Wells* confronted the omission of the "materiality" requirement in Congress's 1948 recodification of the false-statement crime. *Id.* at 490–98. The convicted defendants argued that Congress must have made a mistake by removing the materiality requirement because the Reviser's Note stated that the recodification "was without change of substance." *Id.* at 496–97. The Court disagreed, saying that the legislative history "does nothing to muddy the ostensibly unambiguous provision of the statute as enacted by Congress." *Id.* at 497.

Attempting to undermine the principle animating *Wells*, the SSA marshals four cases—two from the Supreme Court and two from this court—to show that the recodification canon can be used to trump clear text, but the cases show nothing of the sort. In each, the challenged text was ambiguous or was subject to multiple reasonable interpretations.

Leading the charge for the SSA is *Tidewater Oil Co. v. United States*, in which the Supreme Court interpreted the recodified version of the interlocutory-appeal provision found at 28 U.S.C. § 1292(a)(1). 409 U.S. 151, 162–63 (1972). The statutory text allowed interlocutory orders of the district courts involving injunctions "to be appealed to the courts of appeals '*except where a direct review may be had in the Supreme Court.*'" *Id.* at 162 (alteration in original) (quoting 28 U.S.C. § 1292(a)(1) (1952)). The court explained that § 1291(a)(1)'s final clause was "susceptible of two plausible constructions" depending on whether "may be had" meant "may be had immediately" or "may be had eventually," after final judgment. *Id.* Only after finding this ambiguity, did the Court apply the recodification canon to opt for the latter interpretation. *Id.*

Next up is *Southern Pacific Transportation Co. v. San Antonio*, 748 F.2d 266 (5th Cir. 1984). In that case, this court found that the deletion of certain election-of-remedies language from the Interstate Commerce Act during a recodification created ambiguity in the provision's remaining language. *Id.* at 271 n.11. The court resolved the ambiguity by relying on the recodification canon to hold that Congress had not intended to change the statute's meaning. *Id.*

And in *American Bankers Insurance Co. of Florida v. United States,* this court declined to adopt the literal meaning of the word "taxable" in favor of an alternative reasonable interpretation. 388 F.2d 304, 305 (5th Cir. 1968) (per curiam). It did so in part because it did not think that Congress had intended a drastic change in policy by replacing the word "describe" with the word "taxable" in the statute during the recodification. *Id.* But the district court's

opinion, which this court cited approvingly,[8] makes clear that the literal meaning of "taxable" became "clouded with ambiguity and uncertainty" when it was read in connection with its surrounding text, rather than in isolation. *Am. Bankers Ins. Co. of Fla. v. United States*, 265 F. Supp. 67, 74–75 (S.D. Fla. 1967).

Section 405(h)'s third sentence is different from the statutory provisions in those cases. Unlike in *Tidewater Oil* and *Southern Pacific*, the third sentence is not susceptible to two plausible constructions; it is not ambiguous. It bars actions under §§ 1331 and 1346—no more, no less. There is no plausible way to read "section 1331 or 1346 of Title 28" as secretly including § 1334 (or § 1332 for that matter). For the same reason the deletion of "materiality" was dispositive in *Wells,* the deletion of § 1334 jurisdiction is dispositive here. And the third sentence's plain meaning does not become clouded with ambiguity when one's gaze is expanded to the surrounding statutory text, as was the case in *American Bankers*.

The SSA's final case deserves a separate discussion. In *Ankenbrandt v. Richards*, the Court addressed the 1948 recodification of the diversity-jurisdiction statute. 504 U.S. 689 (1992). The recodification changed the statute's language from granting federal courts diversity jurisdiction over "all suits of a civil nature at common law or in equity" to granting it over "all civil actions." *Id.* at 698. In a line of cases going back 100 years, the Court had interpreted the pre-1948 statute as not covering certain domestic-relations cases. *Id.* at 700. The question for the Court was whether the new language

---

[8] This court largely adopted the district court's opinion without adding much analysis of its own. *See Am. Bankers,* 388 F.2d at 305 ("The intricacies of the statutes, their changes, and the legal argument based thereon are set forth in the District Court's opinion. The Court held the contracts were subject to the tax. We agree and affirm." (citation omitted)).

overturned that exception. The Court answered no, relying on the recodification canon. *Id.* at 700–01.

At first blush, *Ankenbrandt* may seem to ignore the statute's plain text. Domestic-relations cases certainly fall within the category of "all civil actions." Just as the *Ankenbrandt* Court used the recodification canon to read out of the statute a category clearly included in the general language, the SSA asks us to do the inverse: to read into § 405(h) a category not listed. This argument flounders, however, when a distinction is brought to light. The words "all civil actions" can plausibly be interpreted as a shorthand or synonym for "suits of a civil nature at common law or in equity." So it was reasonable for the Court to assume that Congress did not change a 100-year-old policy by using a synonym for the past language. This distinction does not hold with the revision to § 405(h)'s third sentence. Replacing "section 41 of Title 28" with "section 1331 or 1346 of [T]itle 28" cannot plausibly be interpreted as a shorthand way of naming the near-30 grants that were originally included in 28 U.S.C. § 41, now scattered across Title 28. And unlike in *Ankenbrandt*, this case does not involve combining the recodification canon with longstanding congressional acquiescence.

In a final attempt to undermine the plain meaning of § 405(h)'s third sentence, the SSA reverts to policy. It tells us that allowing § 1334 jurisdiction would be ill-advised because doing so would deprive the bankruptcy court of the SSA's expertise in handling benefits claims. This argument is reminiscent of the EPA's position in *Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014). There, Congress required facilities emitting more than 100 tons per year ("tpy") of certain pollutants to apply for permits. The EPA interpreted the number "100 tpy" to mean "100,000 tpy." *Id.* at 325. The Supreme Court responded: "We are not willing to stand on the dock and wave goodbye as [the] EPA embarks on this multiyear voyage of discovery. We reaffirm the core

administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Id.* at 328. The same could be said of the SSA's interpretation of § 405(h)'s third sentence.

In sum, we interpret the third sentence to mean what it says. And it says nothing about § 1334. The district court erred by concluding that the third sentenced barred the bankruptcy court's § 1334 jurisdiction.

B.

Our holding on § 405(h)'s third sentence necessitates reversal of the district court's decision and a remand to the bankruptcy court. However, as our interpretation of the third sentence raises possible questions for § 405(h)'s second sentence, we offer the following guidance for the remand.

Our precedent has largely failed to give adequate attention to the conceptual differences between § 405(h)'s second and third sentences. Most of the time, our cases refer to § 405(h) as a whole. *See Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500–01 (5th Cir. 2018); *S.W. Pharmacy Solutions, Inc. v. Ctrs. for Medicare and Medicaid Servs.*, 718 F.3d 436, 440 (5th Cir. 2013); *Physician Hospitals of Am. v. Sebelius*, 691 F.3d 649, 652–53 (5th Cir. 2012). *But see Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 764–65 (5th Cir. 2011). But as the following shows, the second sentence has a distinct function and should be treated separately from the third.

Recall that § 405(h)'s second sentence states that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [stated in § 405(g)]." 42 U.S.C. § 405(h). This sentence does two things. First, it channels claims challenging a certain type of agency decision (described below) into § 405(g). Second, it ensures that § 405(g) is the sole jurisdictional avenue for the channeled claims. So the primary question for the remand is this: Do

Benjamin's claims challenge the type of administrative decisions that § 405(h)'s second sentence channels into § 405(g)?

We will not now parse the details of Benjamin's claims—that is a task for remand. But we will clarify what type of decision § 405(h)'s second sentence channels. It will be for the bankruptcy court to decide if Benjamin's claims are challenging that type of decision.

At first glance, § 405(h)'s second sentence looks like it might apply to every and any decision by the Commissioner. But upon closer inspection, we believe that § 405(h)'s second sentence applies only where the would-be plaintiff is challenging a decision regarding his entitlement to benefits. The key is reading § 405(h) and § 405(g) alongside § 405(b)(1):

> **Section 405(b)(1):** The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. . . . Upon request by any such individual . . . who makes a showing in writing that his or her rights may be prejudiced by any decision the Commissioner of Social Security has rendered, the Commissioner shall give such applicant . . . reasonable notice and opportunity for a hearing with respect to such decision . . . .

> **Section 405(h):** The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as [provided in § 405(g)].

> **Section 405(g):** Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . .

Section 405(b)(1) directs the Commissioner to make "findings" and "decisions" on "the rights of any individual applying for a payment" and says

that when those decisions prejudice the rights of the individuals, those individuals shall be given a hearing if they request one. Section 405(h) parrots that language, saying the Commissioner's "findings" and "decision" are binding "after a hearing" and that any review of the Commissioner's "findings" and "decision" must proceed as provided in § 405(g). Section 405(g) authorizes a person to seek judicial review of the Commissioner's "final decision . . . made after a hearing." As we interpret them, § 405(h) and § 405(g) refer to the same findings, decisions, and hearings referenced in § 405(b)—findings, decisions, and hearings regarding "the rights of individuals applying for a payment under [Subchapter II]." Put differently, where an individual is *not* challenging a decision regarding his entitlement to benefits made after an application for payment and therefore *not* receiving the statutorily-prescribed hearing under subsection (b)(1), his claim never gets channeled under § 405(h)'s second sentence or reviewed by a court under § 405(g).[9] *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (holding that § 405(b)(1) provides "all eligible claimants—that is, people seeking benefits—with an opportunity for a hearing with respect to such decision[s]" (alteration in original)).

The Supreme Court said as much in *Califano v. Sanders*, 430 U.S. 99 (1977). In that case, a beneficiary sued to challenge the Commissioner's decision denying his motion to reopen earlier disability-determination proceedings, arguing he could proceed under § 405(g). *Id.* at 103. The Court disagreed that § 405(g) permitted the suit by pointing to § 405(b): "This provision [§ 405(g)] clearly limits judicial review to a particular type of agency action, a 'final decision of [the Commissioner] made after a hearing.' But a

---

[9] This interpretation of § 405(h)'s second sentence is fully consistent with our decision in *Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011). There, we said that the second sentence applies when a "judicial decision favorable to the plaintiff would affect the merits of whether the plaintiff is entitled to . . . benefits." *Id.* at 764. We are simply explaining the statutory underpinnings of this conclusion.

petition to reopen a prior final decision may be denied without a hearing as provided in [§ 405(b)]." *Id.* at 108 (quoting § 405(g)). It did not matter that agency *regulations* provided for a hearing on motions to reopen. *Id.*; *see id.* at 102 (citing 20 C.F.R. §§ 404.957–404.958 (1976)). The statute channeled only decisions of the Commissioner for which the *statute* prescribed a hearing—namely, claims addressing the entitlement to benefits.

With this guidance in mind, the bankruptcy court should examine Benjamin's claims and determine whether they are primarily about his entitlement to benefits—that is, a payment of money because he (or his sister) is disabled—or claim for money because the SSA failed to comply with its own regulations in recouping the overpayment. The former claim would be channeled by § 405(h)'s second sentence into § 405(g); the latter would not be. And if Benjamin's claims are not channeled, then the bankruptcy court had jurisdiction under § 1334 to hear Benjamin's claims.

\*    \*    \*

For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.