# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 3, 2022

Lyle W. Cayce
Clerk

No. 20-30732

D&G Holdings, L.L.C., formerly doing business as Doctors Lab,

*Plaintiff—Appellant*,

*versus*

Xavier Becerra, Secretary, U.S. Department of Health and Human Services,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1045

Before Owen, *Chief Judge*, and Jones and Wilson, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Under the Medicare Act, the Department of Health and Human Services ("H.H.S.") is statutorily obliged to pay back any recouped funds when an initial overpayment determination is overturned. This appeal presents the question whether (and when) judicial review of the Secretary's

No. 20-30732

allegedly incomplete repayment of recouped funds is available under 42 U.S.C. § 405(g).  We hold that "effectuations" of final agency decisions, when sought to liquidate the amount of repayment owed, are reviewable under § 405(g) as continuous aspects of the initial, properly exhausted, administrative decision.  The district court's judgment of dismissal is REVERSED, and the case is REMANDED for proceedings consistent herewith.

## BACKGROUND

Appellant D&G Holdings, L.L.C. ("D&G"), which previously operated as Doctors Lab, was a Medicare service provider for nursing homes and homebound individuals from 1986 to 2016.  D&G's controversy with H.H.S. began when a Medicare Zone Program Integrity Contractor, AdvanceMed, concluded in 2014 that D&G had received $8.3 million in excess Medicare reimbursements over several years.  The Medicare Administrative Contractor for Louisiana, Novitas Solutions, Inc. ("Novitas"), relied on AdvanceMed's calculations and instructed D&G to refund the $8.3 million plus interest to Medicare.  Sixteen days after the initial overpayment determination, Novitas began recouping the alleged overpayment from D&G.  D&G commenced the "harrowing" administrative appeals process by submitting a request for redetermination to Novitas.[1] *Family Rehab, Inc. v. Azar*, 886 F.3d 496, 499 (5th Cir. 2018).

---

[1] The administrative appeal process is as follows.

At the outset, a Medicare Administrative Contractor makes an "initial determination" regarding the overpayment amount.  A provider who is displeased with the Medicare Administrative Contractor's initial determination may then seek a "redetermination"—the first step in a five-step appeal process.  The redetermination is conducted by employees of the Medicare Administrative Contractor who were not involved in the initial determination.  Second, if the provider remains dissatisfied, the

No. 20-30732

For over three years, D&G's administrative appeal worked its way through the process, and D&G went out of business in 2016 for reasons related to the lengthy appeal. In 2017, D&G received a fully favorable decision from the Medicare Appeals Council, which reversed the overpayment determination. The Appeals Council emphasized Novitas's poor record keeping and inconsistent documentation, as it found that "the case record cannot reasonably be relied upon to support a measurement of the overpayment in this case." The Appeals Council, however, did not address the repayment of funds that had already been recouped during the appeals process.

Shortly after the Appeals Council issued its decision, D&G sued the H.H.S. Secretary in federal court seeking repayment of the recouped funds, which then amounted to $4,136,258.19 in principal and $593,294.54 in accrued interest. Curiously, on the same day D&G filed suit, Novitas paid D&G $1.8 million; no explanation or accounting accompanied this payment. D&G duly subtracted $1.8 million from its request and currently contends that it is owed over $2.3 million in principal and a substantial additional amount of accruing interest. The Secretary disputes this calculation and contends that it actually overpaid D&G. The parties' factual dispute appears

---

provider may request a "reconsideration." A Qualified Independent Contractor, another private contractor, conducts the "independent" reconsideration. Third, if the provider still remains dissatisfied, the provider may request a hearing before an administrative law judge (ALJ). The ALJ reviews the case *de novo*. Fourth, either the provider or CMS, through its contractors, may request that the Medicare Appeals Council (Council) review the ALJ's decision. The Council, like the ALJ, reviews the case *de novo*, and its decision constitutes the Secretary's final decision. Fifth, if all else fails, the provider is entitled to judicial review of the Secretary's final decision . . . as is provided in section 405(g) . . . .

*Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335, 338 (5th Cir. 2017) (internal citations and quotation marks omitted).

to arise from Novitas's failure to provide complete records of how much money has been recouped.

The district court dismissed D&G's case for lack of subject matter jurisdiction. It held that there was no federal court jurisdiction pursuant to 42 U.S.C. § 405(g), as applied to Medicare appeals by 42 U.S.C. § 1395ff(b)(1)(A), because it characterized D&G's grievance regarding the calculation and payment of the recouped funds as a separate agency action that was administratively unexhausted. The court rebuffed D&G's contrary characterization that the "effectuation" was but an aspect of the original agency proceedings such that only one continuous action existed for purposes of § 405(g).

D&G appealed the dismissal to the Fifth Circuit. *D&G Holdings, L.L.C. v. Azar*, 776 F. App'x 845 (5th Cir. 2019) ("*D&G Holdings I*"). This court vacated and remanded for reconsideration in light of a then-recent opinion, *Matter of Benjamin*, 932 F.3d 293 (5th Cir. 2019). Two points are relevant for present purposes. First, *Benjamin* held that, if a litigant cannot establish jurisdiction under § 405(g), alternative bases of jurisdiction are available unless they are explicitly prohibited by the text of the statute's channeling provision, § 405(h). *Id.* at 296. This court instructed the district court to allow D&G to amend its complaint to seek mandamus relief as an alternate source of jurisdiction. 776 F. App'x at 848.

Second, this court did "not address the correctness of the district court's . . . opinion, save for one aspect." *Id.* We held that the trial court erred in characterizing Novitas's decision to repay $1.8 million as an "initial determination." *Id.* The Medicare Act defines an "initial determination" as a decision regarding an individual's entitlement to benefits. *Id.* The panel concluded that Novitas's determination "by unknown means" of "how

No. 20-30732

much money it had garnished from D&G" did not fall within this definition. *Id.* The panel further noted:

> As best we can tell, it appears that Novitas picked the number out of thin air. What is worse, its affiant (Shaena Parker) admits the amount was wrong. All this makes one thing inescapably clear: Neither the Secretary nor Novitas seem to have any idea what they are doing or what is going on. It is inexcusable that the Secretary would allow Novitas to wield the sovereign authority of the United States to seize money from a private company but then be utterly unable to give an accounting for the amount pillaged.

*Id.*

On remand, the district court maintained the position that it lacked jurisdiction under § 405(g) because the "effectuation" was a separate agency action that needed to be administratively presented and exhausted. The court also rejected D&G's amended mandamus claim under Rule 12(b)(6), and granted the Secretary's second motion to dismiss. D&G timely appealed.

After D&G filed the present appeal, another curious action was taken by Novitas. Novitas notified D&G's counsel that it had reopened[2] its "effectuation" action and revised it to allow D&G to administratively appeal the prior $1.8 million refund calculation. Novitas acknowledged that it previously "did not afford appeal rights with respect to the amount refunded," but its "revised action" now includes the right to appeal. Novitas purported to explain how it determined that the recoupment amount was $1.8 million. The Secretary moved this court to take judicial notice of the

---

[2] A reopening is "a remedial action taken to change a binding determination or decision that resulted in either an overpayment or underpayment." 42 CFR § 405.980(a)(1).

No. 20-30732

letter.  D&G opposes this motion on the basis that "reopening" would be *ultra vires*, *void ab initio*, and a "thinly veiled attempt to unilaterally deprive this Court of jurisdiction to consider D&G's second appeal."[3]

## STANDARD OF REVIEW

This court reviews jurisdictional questions *de novo*.  *Azar*, 886 F.3d at 500.  When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion "before addressing any attack on the merits."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## DISCUSSION

### I.    Jurisdiction Under 42 U.S.C. § 405(g)

The jurisdictional dispute here turns on the nature of the "effectuation" as repayment of recouped funds for purposes of 42 U.S.C. § 405(g), as applied to Medicare claims under 42 U.S.C. § 1395ff(b)(1)(A). If the "effectuation" is a separate agency action, then, as explained below, federal courts would not have jurisdiction under § 405(g), which confers federal court jurisdiction only over exhausted initial agency determinations. On the other hand, if the "effectuation" is a continuation of the initial agency action that determined D&G's entitlement to benefits, i.e., reversal of the overpayment determination, the federal district court has § 405(g) jurisdiction to finalize the amount of repayment owed by the Secretary.

We begin with the statutory structure for judicial review of agency action.  Section 405 limits the power of federal courts to hear claims arising

---

[3] For reasons noted *infra*, we GRANT both the Secretary's motion and D&G's cross-motion.

No. 20-30732

under the Medicare Act; subsections (g) and (h) define the scope of judicial review.[4] Section 405(h) provides:

> **[1]** The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. **[2]** No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. **[3]** No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (numerals added). The third sentence of § 405(h) "strips district courts of the most obvious sources of federal jurisdiction" for these claims. *Benjamin*, 932 F.3d at 296. The second sentence "channels" the class of available claims "into § 405(g), which, in turn, grants jurisdiction to district courts to review final agency decisions made after a hearing." *Id.* "Section 405(h) purports to make exclusive the judicial review method set forth in § 405(g)." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10, 120 S. Ct. 1084, 1091 (2000).

Section 405(g) is the Medicare Act's jurisdictional provision. In relevant part, § 405(g) provides that

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . . The court shall have power to enter, upon the pleadings and transcript of the record,

---

[4] Section 405 is found in the Social Security Act, but both subsections (g) and (h) are incorporated into the Medicare Act. Section 1395ii makes § 405(h) applicable to the Medicare Act "to the same extent" as it is applicable in the Social Security Act. Section 1395ff(b)(1)(A) incorporates § 405(g). Crucially, § 1395ff(b)(1)(A) limits judicial review to initial determinations that have been exhausted through the administrative appeals process. Agency actions that are not "initial determinations" are therefore not eligible for § 405(g) judicial review under § 1395ff(b)(1)(A).

a judgment affirming, modifying, or reversing the decision of
the [Secretary] . . . .

42 U.S.C. § 405(g). As noted in footnote 4, § 1395ff(b)(1)(A) limits judicial review under § 405(g) to initial determinations. Section 405(g) "contains two separate elements: first, a jurisdictional requirement that claims be presented to the agency, and second, a waivable requirement that the administrative remedies prescribed by the Secretary be exhausted." *Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019) (internal quotation marks omitted).

Nevertheless, the Supreme Court has identified circumstances in which a particular contention that was not strictly presented or exhausted through the administrative process was reviewable under § 405(g). *Illinois Council*, 529 U.S. at 19–20, 23, 120 S. Ct. at 1096–97, 1099; *see also Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 680, 106 S. Ct. 2133, 2141 (1986). In *Illinois Council*, the Court acknowledged that certain "contentions" relevant to the "'action' arising under the Medicare Act" are reviewable by the courts, even if those "contentions" themselves were not subject to a hearing. 529 U.S. at 23, 120 S. Ct. at 1099. The challengers there complained about certain procedural regulations pertaining to the agency's review, but they did not initiate agency review *at all*, and attempted instead to bring their challenge directly to the courts. *Id.* The Court held that the challengers were required to present the matter to the agency first, but they "remain free, however, after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends." *Id.* at 23, 120 S. Ct. at 1099. The Court went on to say:

> The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one is beside the point because it is the "action" arising under the Medicare Act that must be channeled through the agency.

After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve *any statutory or constitutional contention that the agency does not, or cannot, decide*, including, where necessary, the authority to develop an evidentiary record.

*Id.* at 23–24, 120 S. Ct. at 1099 (internal citations omitted) (first emphasis in original, second emphasis added).

Evident from this guidance is that the channeling requirements under Sections 405(g) and (h) require courts to focus on the *action* arising under the Medicare Act and not on other related "contentions." Here, Novitas's "effectuation" raises contentions that the agency "[did] not, or cannot, decide," *id.* at 23, 120 S. Ct. at 1099, because quantifying the required repayment could only occur after the Appeals Council had reversed the overpayment decision. As a statutory contention that the agency "[did] not, or cannot, decide," *id.* at 23, such "effectuation" falls within the category of "contentions" anticipated in *Illinois Council*. Equally significant, this court's conclusion in *D&G Holdings I* that the "effectuation" was not an "initial determination," 776 F. App'x at 848, correlates with the reasoning in *Illinois Council*.

The district court thus erred by concluding that *Illinois Council* did not apply here. It reasoned that, because D&G was challenging Novitas's factual compliance with the overpayment determination, instead of making a legal challenge, the claim was fundamentally different. This reasoning arbitrarily limited *Illinois Council* to its facts, whereas the Court authorized judicial review following agency action for "*any* statutory or constitutional contention that the agency *does not, or cannot*, decide." *Illinois Council*, 529 U.S. at 23–24, 120 S. Ct. at 1099 (emphasis added). Further undermining the district court's reasoning is the Supreme Court's statement

No. 20-30732

that federal courts conducting review of final agency action have "where necessary, the authority to develop an evidentiary record" to address such disputes. *Id.* (emphasis added). Consequently, the district court has the ability to do what it needs to in order to resolve the dispute regarding how much principal and interest the Secretary is obliged to repay D&G pursuant to 42 U.S.C. § 1395ddd(f)(2)(B).[5]

The Secretary contends that *Illinois Council* does not apply because, after all, D&G was required to seek "redetermination" of the repayment amount through administrative channels. Specifically, the Secretary argues that the "effectuation" cannot be reviewed by the courts because D&G has not received a redetermination decision. He argues that "[i]f D&G disagreed with the calculation of the effectuation or the resulting amount, D&G could request redetermination of that decision." But according to the statute and regulations, only initial determinations are subject to redeterminations,[6] and *D&G Holdings I* forecloses that possibility. The Secretary would have this court contradict *D&G Holdings I*, which we cannot do as a matter of law of the case and precedent, or interpret the Medicare Act as not affording judicial review of such "effectuations" at all. Neither interpretation makes sense legally and both conflict with applicable Supreme Court precedent. *Illinois Council*, 529 at 23–24, 120 S. Ct. at 1099; *Michigan Academy*, 476 U.S. at 670, 106 S. Ct. at 2135 (articulating the "strong presumption that Congress intends judicial review of administrative action"). Further, it would be unconscionable to require a party to exhaust administrative remedies in order

---

[5] This is consistent with federal courts' broad statutory jurisdiction to affirm, modify, or reverse the agency decision with or without remand, which the Supreme Court characterized as reflecting "a high 'degree of direct interaction between a federal court and an administrative agency' envisioned by § 405(g)." *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 (2019) (citing *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S. Ct. 2248, 2254 (1989)).

[6] 42 U.S.C. § 1395ff(a)(3)(A); 42 CFR § 405.940.

No. 20-30732

to prove that Medicare erroneously collected recoupment, and then to spend several more years of administrative appeals simply to determine the amount it is owed.  Federal courts are fully equipped to perform this ultimate legal inquiry.

The district court had jurisdiction under § 405(g) to resolve this dispute because "effectuations" are inextricably intertwined with the initial exhausted agency action.[7]  It committed reversible error when it granted the Secretary's motion to dismiss.[8]

## II.    January 22, 2021 Notice of "Reopening"

On January 22, 2021, Novitas purported to "reopen" its "effectuation" decision three years after litigation commenced in federal court.  The Secretary claims this notice bolsters its position that D&G has yet to exhaust the administrative remedies available to it.  We disagree.  For two reasons, Novitas's attempted reopening is *ultra vires*.

Agencies' "power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when

---

[7] A separate doctrine provides that claims that are "inextricably intertwined with . . . a claim for benefits" cannot be divorced for purposes of federal question jurisdiction.  *Heckler v. Ringer*, 466 U.S. 602, 624, 104 S. Ct. 2013, 2026 (1984); *see also RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 557–59 (5th Cir. 2004).  Specifically, if a claim is "inextricably intertwined" with a claim for benefits, it "arises under the Medicare Act" for purposes of federal court jurisdiction.  *See Heckler*, 466 U.S. at 624, 104 S. Ct. at 2026.  Similar logic extends to the present context as well.  An "effectuation," which in this case amounts to liquidation of the amount of repayment owed, is similarly "inextricably intertwined" with the underlying agency decision and, thus, is reviewable under § 405(g) once there is jurisdiction to review the underlying claim for benefits.

[8] Based on the foregoing analysis, we need not reach the challenges raised by the parties pertaining to D&G's mandamus claim.  *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10, 120 S. Ct. 1084, 1091 (2000).

they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297, 133 S. Ct. 1863, 1869 (2013). "[A] claim of ultra vires" presents a question of law. *Jean v. Gonzales*, 452 F.3d 392, 396 (5th Cir. 2006) (collecting cases). Any reopening must conform with the "guidelines established by the Secretary in regulations." 42 U.S.C. § 1395ff(b)(1)(G).

First, for a contractor like Novitas, a reopening is authorized by statute only for initial determinations or redeterminations.[9]   42 U.S.C. § 1395ff(b)(1)(G); 42 C.F.R. § 405.980(a)(1)(i). In *D&G Holdings I*, this court has already held that the "effectuation" decision in this case is not an "initial determination." And, as discussed *supra*, there can be no redetermination absent an initial determination. 42 U.S.C. § 1395ff(a)(3); 42 CFR § 405.940. Accordingly, the Secretary had no authority to consider reopening the "effectuation" without contradicting this court's prior dispositive holding.

Second, the regulations place time limits on a contractor's ability to reopen an initial determination or redetermination. Because the "effectuation" occurred in August 2017, more than three years before the purported reopening, Novitas must have had "good cause as defined in § 405.986." 42 CFR § 405.980(b)(2). "Good cause" under § 405.986

---

[9] The Secretary argues that the reopening was not *ultra vires* because this court should not interpret § 1395ff(b)(1)(G) to "limit the Secretary or his contractors." In other words, he suggests that the statute's explicit allowance of the Secretary's ability to reopen and revise initial determinations should not implicitly disallow reopening non-initial determinations. It is not this court but the applicable law and regulations that cabin the authority of the Secretary and his contractors to reopen proceedings. Besides the obvious interpretive defects of the Secretary's argument, it fundamentally misunderstands the source and scope of agency power. *See Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 357, 106 S. Ct. 1890, 1901 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it.").

"may be established when – (1) There is new and material evidence . . . or (2) The evidence that was considered in making the determination or decision clearly shows on its face that an obvious error was made at the time of the determination or decision."   42 CFR § 405.986(a).  The Secretary's barely-argued motion does not address or even attempt to establish Novitas's good cause.    Therefore, the Secretary's attempted reopening of the "effectuation" was untimely.   For both of these reasons, the purported reopening was *void ab initio.*

The district court's judgment is REVERSED, and the case is REMANDED for proceedings consistent herewith.