# United States Court of Appeals for the Federal Circuit

_____

**VICTOR B. SKAAR,**
*Claimant-Cross-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

_____

2021-1757, 2021-1812

_____

Appeals from the United States Court of Appeals for Veterans Claims in No. 17-2574, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Michael P. Allen.

_____

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

_____

MICHAEL JOEL WISHNIE, Veterans Legal Services Clinic, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT, for claimant-cross-appellant. Also represented by MEGHAN BROOKS, NATHAN HERNANDEZ, CAROLINE MARKOWITZ, CAMILLA REED-GUEVARA. Also represented by LYNN K. NEUNER, ANTHONY PICCIRILLO, Simpson Thacher & Bartlett LLP, New York, NY.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington,

2                                    SKAAR v. MCDONOUGH

DC, for respondent-appellant.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

Before MOORE, *Chief Judge*, NEWMAN, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.

DYK, *Circuit Judge*, with whom REYNA, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

## O R D E R

Victor B. Skaar filed a combined petition for panel rehearing and rehearing en banc. A response to the petition was invited by the court and filed by Denis McDonough. The petition was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc was referred to the circuit judges who are in regular active service. The court conducted a poll on request, and the poll failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue January 24, 2023.

FOR THE COURT

January 17, 2023                  /s/ Peter R. Marksteiner
        Date                     Peter R. Marksteiner
                                 Clerk of Court

# United States Court of Appeals for the Federal Circuit

———————————

**VICTOR B. SKAAR,**
*Claimant-Cross-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

———————————

2021-1757, 2021-1812

———————————

Appeals from the United States Court of Appeals for Veterans Claims in No. 17-2574, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Michael P. Allen.

———————————

DYK, *Circuit Judge*, with whom REYNA, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*, join, dissenting from the denial of the petition for rehearing en banc.

This case centrally concerns the availability of class actions for veterans' benefits claims. The panel decision here effectively eliminates such class actions for veterans and in doing so contradicts established Supreme Court precedent. We respectfully dissent from the denial of en banc rehearing.

I

For many years the system for processing veterans' claims has been inefficient and subject to substantial delays to the disadvantage of our nation's veterans. The Department of Veterans Affairs ("VA") currently has over

685,000 pending disability compensation and pension claims. *See Veterans Benefits Administration Reports: Claims Inventory*, U.S. Dep't of Veterans Affs. (current as of Dec. 17, 2022), https://www.benefits.va.gov/reports/mmwr_va_claims_inventory.asp (hereafter "*Claims Inventory*"). This backlog causes significant delays in adjudicating claims, as we concluded in *Ebanks v. Shulkin*, 877 F.3d 1037, 1038 (Fed. Cir. 2017). The Committee Report to the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105, noted that, at the time, there were approximately 470,000 pending *appeals* to the Board, and the VA projected that, without changes, by 2027 the wait for claimants to receive a final appeals decision would be ten years. *See* H.R. Rep. No. 115-135, at 5 (2017). The Committee Report concluded "VA's current appeals process is broken." *Id.*

While there have been some improvements in the last five years to the number of appeals pending at the Board of Veterans' Appeals, there are still about 210,000 appeals pending before the Board. *Board of Veterans' Appeals: Decision wait times*, U.S. Dep't of Veterans Affs. (last visited Dec. 12, 2022), https://www.bva.va.gov/decision-wait-times.asp. The number of claims awaiting an initial decision from the VA has more than doubled in the last five years, from about 320,000 in mid-2017 to more than 680,000 in 2022. *See Claims Inventory, supra.*

The class action mechanism, first approved in our decision in *Monk v. Shulkin*, 855 F.3d 1312 (Fed. Cir. 2017), promised to help ameliorate these problems to some significant extent, enabling veterans in a single case to secure a ruling that would help resolve dozens if not hundreds of similar claims. In *Monk*, we recognized that aggregate treatment of claims at the Veterans Court could "promot[e] efficiency, consistency, and fairness, and improv[e] access to legal and expert assistance by parties with limited resources." *Id.* at 1320.

The decision here will effectively eliminate class actions in the veterans' context by limiting the class to those who have already appealed and those who have secured a

Board decision and can (indeed must) file appeals with the Veterans Court within 120 days, a step that would make them named parties to an appeal. The majority of claimants—all others with pending or future claims—would not be eligible for class treatment.[1]

The panel opinion here does not suggest that class actions for veterans are undesirable or of limited utility but rather rests on the mistaken notion that the jurisdiction of the Veterans Court over class actions is limited to situations where the class members had already secured a final decision from the Board of Veterans' Appeals. *Skaar v. McDonough*, 48 F.4th 1323, 1325 (Fed. Cir. 2022); *see* 38 U.S.C. § 7252(a) (granting the Veterans Court "power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate").

Precedential decisions of the Veterans Court are no substitute for the class action mechanism—those decisions are rare, *see Monk*, 855 F.3d at 1321, not binding on the government, *see Wolfe v. McDonough*, 28 F.4th 1348, 1358 (Fed. Cir. 2022), and, in any event, ill-suited to resolving factual disputes such as those involved here. Nor are precedential decisions of this court. *See* 38 U.S.C. § 7292(d)(2) (barring Federal Circuit jurisdiction, in the absence of a constitutional issue, to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case").

The unhappy adverse consequence of eliminating class actions speaks to the importance of this case.

## II

Review is particularly important since there are substantial flaws in the panel's analysis, which is at odds with Supreme Court decisions.

---

[1] The only exception would seem to be class actions for petitions for writs of mandamus, for example, challenging undue delay in processing claims. That was the situation in *Monk* itself.

First, the very purpose of class actions is to bring before the court claimants who have not perfected their claims by bringing their own individual suits. Class actions can be beneficial and superior to individual litigation precisely because they permit the aggregation of claims not yet filed in court. Class actions do not merely consolidate claims already filed in court, but aggregate in a single suit claims that have not been filed. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310–11 (3d Cir. 2011) (en banc) (recognizing a class action's ability to achieve "global peace" including "potential plaintiffs who had not yet filed cases").

Second, the class action mechanism is not created by § 7252(a), nor is it cabined to only those who presently satisfy the jurisdictional requirements of that section. Rather, the class action mechanism is created by the All Writs Act, 28 U.S.C. § 1651, as our decision in *Monk* concluded, and as at least one other circuit has held in similar circumstances in which Federal Rule of Civil Procedure 23 is unavailable.[2] A class action mechanism under the All Writs Act can be "in aid of" the court's jurisdiction, 28 U.S.C. § 1651(a), and may reach future claims over which jurisdiction has not yet been perfected but would be perfected in the future. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943) ("[A circuit court's] authority is not confined [under the All Writs Act] to the issuance of writs in aid of

---

[2]    The Second Circuit has affirmed the certification of a class action in the *habeas* context under the All Writs Act. *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (concluding that the All Writs Act enables courts to adopt "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage" (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969))).

Since it certified the class at issue here, the Veterans Court has adopted a class action rule modeled after Federal Rule of Civil Procedure 23, which governs class actions in district courts. *See* U.S. Vet. App. R. 23.

a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) ("[T]he [All Writs] Act allows [courts] to safeguard not only ongoing proceedings, but potential future proceedings . . . ." (citation and footnotes omitted)); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3932 (3d ed. 2022).

Third, the panel's reading of the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749 (1975), and later cases, as barring class actions where all class members have not yet satisfied the requirements of § 7252 is clearly mistaken. In *Weinberger*, the court considered a Social Security Act jurisdictional provision similar to § 7252(a), providing that "[a]ny individual, after any final decision of the Secretary [of the Department of Health, Education, and Welfare] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(g) (1976).[3] The panel concluded that *Weinberger* held: "[W]hile [the court] had jurisdiction of the claims of the named appellees under the provisions of 42 U.S.C. § 405(g), it had no jurisdiction over the claims asserted on behalf of unnamed class members." *Skaar*, 48 F.4th at 1332 (quoting *Weinberger*, 422 U.S. at 753) (alterations in *Skaar*).

While this is accurate, the panel failed to note that the reason that the court lacked jurisdiction over the unnamed class members was that they had not even filed a claim with the agency. As the Supreme Court concluded shortly thereafter in *Mathews v. Eldridge*, "the complaint [in *Weinberger*] was found to be jurisdictionally deficient since it 'contained no allegations that [unnamed members of the class] ha[d] even filed an application with the

---

[3] Section 405(g) has been amended to replace the Secretary with the Commissioner of Social Security. *See* 42 U.S.C. § 405(g) (2020).

Secretary . . . .'" 424 U.S. 319, 329 (1976) (ellipses in original and modification omitted) (quoting *Weinberger*, 422 U.S. at 764); *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019). Further, the Supreme Court in *Weinberger* did not consider the All Writs Act, which, as discussed above, provides the Veterans Court the ability to certify class actions with members whose claims in the future could come within the court's jurisdiction.

In any event, in *Califano v. Yamasaki*, 442 U.S. 682 (1979), involving the same jurisdictional provision that was at issue in *Weinberger*, 42 U.S.C. § 405(g), the Supreme Court revisited *Weinberger* and specifically approved classes including both individuals who had filed claims but who had not yet secured a decision from the Secretary and those who had not yet even filed claims but would do so in the future. The Supreme Court discussed the earlier case, while making clear that class action relief was available in the Social Security context in appropriate circumstances. *See Califano*, 442 U.S. at 698–703. The Supreme Court rejected the argument "that Congress contemplated a case-by-case adjudication of claims under [§ 405(g)] that is incompatible with class relief." *Id.* at 698–99. The Court noted that "every Court of Appeals that has considered this issue has concluded that class relief is available under [§ 405(g)]." *Id.* at 699. It explained that "a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them." *Id.* at 700.

The classes at issue in *Califano* involved individuals who had been determined by the Secretary to have been overpaid Social Security benefits. *Id.* at 684. Recipients determined to have been overpaid could either seek reconsideration to contest the accuracy of that determination or seek waiver of recovery by the Secretary. *Id.* at 686. The Supreme Court explained that the certified classes at issue in *Califano* (all those whom the Secretary had determined had been overpaid) were overbroad, but only with regard to those Social Security claimants "who had not filed requests for reconsideration or waiver in the past *and would not do so in the future*" because "[a]s to them, no 'final decision'

concerning the right to a prerecoupment hearing has been *or will be made.*" *Id.* at 704 (emphasis added); *see also id.* at 688–89. The Supreme Court approved classes that included claimants who had not yet secured a final decision of the Secretary after a hearing, despite the requirements of § 405(g).

Contrary to the panel opinion,[4] exhaustion of administrative remedies (here, securing a final decision of the Board of Veterans' Appeals) is not a jurisdictional requirement under *Weinberger* and its progeny even for named plaintiffs. The Supreme Court made this explicit in the Social Security context only three years ago in *Smith v. Berryhill*, in which the Court stated that the only "'jurisdictional' requirement [is] that claims be presented to the agency.'" 139 S. Ct. at 1773 (quoting *Mathews*, 424 U.S. at 328). "[E]xhaustion itself is not a jurisdictional prerequisite." *Id.* at 1779. Here, the class included individuals who have satisfied the jurisdictional requirement by filing a claim with the VA; even if they were named plaintiffs, there would be no jurisdictional requirement that they exhaust administrative remedies.

There is, moreover, class action jurisdiction even as to class members who have not filed claims but who will do so in the future. The Court in *Califano* held that the class members who could file claims "in the future" had been properly included by the lower courts. *Califano*, 442 U.S. at 704. The D.C. Circuit has confirmed that *Califano* permits Social Security classes to include future claimants. *Tataranowicz v. Sullivan*, 959 F.2d 268, 272 (D.C. Cir. 1992) (approving future claimants' membership in a social security class because "the Court [in *Califano*] appeared to approve a class including persons who had not yet satisfied

---

[4]    *See Skaar*, 48 F.4th at 1333 n.3 ("We emphasize that the requirements of having requested a benefit *and of having received a Board decision on that request* are 'purely "jurisdictional" in the sense that [they] cannot be 'waived.'" (quoting *Mathews*, 424 U.S. at 328) (emphasis added) (alteration in original)).

§ 405(g), but would ultimately do so"). In order to prevail in their individual cases, the class members would, of course, have to exhaust administrative remedies by securing a decision by the Board on their individual claims in due course, but such exhaustion is not a requirement for class action resolution of the common issue—whether the VA's dose estimate methodology for Palomares veterans was based on sound scientific evidence. There is no jurisdictional requirement that bars a class action by veterans who have filed claims but have not yet secured final decisions by the Board.[5]

Fourth, while admitting that class actions involving future claimants may be brought in district court, *Skaar*, 28 F.4th at 1333–34, the panel mistakenly attributes that anomaly to the fact that the district courts have supplemental jurisdiction under 28 U.S.C. § 1367, a statute that is inapplicable to the Veterans Court. The panel opinion states: "While district courts may indeed exercise jurisdiction over future claimants, that is because Congress

---

[5]    To be sure, exhaustion of the statutorily prescribed procedures is only excused where the class claim is collateral to the merits of any individual benefits determination. *See Bowen v. City of New York*, 476 U.S. 467, 483 (1986) ("The claims in this lawsuit are collateral to the claims for benefits that class members had presented administratively. The class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations."). The claim here is collateral in the same sense as the claim in *Bowen*. In *Bowen*, the claim was that the Secretary was using an improper standard to adjudicate benefits claims. So here, as described in Section III, the claim is that an improper standard is being applied for veterans to demonstrate service-connected radiation exposure from the Palomares clean-up. The class action will not determine the individual benefit claims—only the common claim regarding the dose estimate methodology for Palomares veterans.

explicitly conferred the district courts with supplemental jurisdiction encompassing such claims." *Id.* (citing § 1367(a)).

With respect, that is a misunderstanding of the role § 1367(a) plays in class action lawsuits. Section 1367 is meant for cases in which a district court would not otherwise have subject matter jurisdiction. But district courts have long been held to have subject matter jurisdiction over class members who will only later suffer injury or otherwise qualify for the class. Indeed, § 1367 was only passed in 1990, and class action lawsuits with future claimant members were common before it was passed. *See, e.g.*, *Sullivan v. Zebley*, 493 U.S. 521, 527 (1990) (citation omitted) (ruling, before § 1367 become law, in favor of the "class of all persons 'who are now, or who in the future will be, entitled to'" a certain administrative determination from the Social Security Administration); *Califano*, 442 U.S. at 704; Amicus Br. of 15 Admin. L., Civ. Proc., and Fed. Cts. Professors in Support of Claimant-Cross-Appellant and Affirmance at 9–13.

District courts did not, and to this day do not, rely on § 1367 in certifying such class actions.[6] *See* Adam S. Zimmerman, *Exhausting Government Class Action*, U. Chi. L. Rev. Online (Oct. 20, 2022) ("No federal court—not one— has ever said that [§ 1367] provides a basis to review

---

[6] The opinion cites for support *Exxon Mobil Corp. v. Allapattah Services, Inc.*, which states "§ 1367 confers supplemental jurisdiction over claims by . . . Rule 23 plaintiffs." 545 U.S. 546, 560 (2005). But *Exxon* only held that § 1367 permitted individual claims to be aggregated in a class action without every claim's meeting the amount in controversy requirement for diversity jurisdiction, so long as one claim met the amount in controversy requirement. *See id.* at 549. *Exxon* does not suggest that without § 1367 class actions cannot include absent class members who have yet to file their own claims. And *Exxon* did not question the longstanding practice of district courts of certifying such classes with future claimants.

federal class actions, asserting federal claims, against the federal government.").

### III

This case is a particularly appropriate vehicle for class action treatment. The case arises from an incident in which approximately 1,400 United States servicemembers were exposed to radiation following a nuclear accident. On January 17, 1966, two Air Force planes collided and dropped four hydrogen bombs near the small fishing village of Palomares, Spain. The non-nuclear explosives in two of the bombs detonated, dispersing plutonium dust over miles of the Spanish countryside. A rotating team of United States servicemembers, including the named plaintiff in this action—Air Force veteran Victor Skaar—worked for months cleaning up the radioactive contamination from the accident.

In 1998, Mr. Skaar was diagnosed with leukopenia—a low white blood cell count that he claims may be caused by radioactive exposure. Mr. Skaar alleges in this suit that, for decades, the VA has employed a flawed dose estimate methodology that dramatically underestimated his and other veterans' radioactive exposure during the Palomares clean-up and, on that ground, has denied disability compensation benefits that he is entitled to receive. The Secretary confirmed that 1,388 service members had participated in the Palomares clean-up. Mr. Skaar noted at least 19 veterans have already filed claims. Mr. Skaar's claim is representative of many other veterans who had been involved in the clean-up, whose claims are at various stages in the process.

Mr. Skaar's contention is that the challenged dose estimate methodology was not based on "actual recorded dose intakes" for individual Palomares veterans, but, rather, on "environmental measurements" and other generalized data, and was then applied broadly to "subcategories of veterans." J.A. 6 (citation omitted). Whether this dose estimate methodology was based on sound scientific evidence would appear to be a textbook example of a common question that would be amenable to aggregate resolution, since

"determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Class action treatment of these veterans' claims serves the purpose of the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxins Act of 2022 ("PACT Act"), passed in response to some of the challenges Palomares veterans and other veterans with service-related exposure to toxic materials had faced in receiving benefits from the VA. Pub. L. No. 117-168, 136 Stat. 1759. Specifically, § 402, titled "Palomares or Thule Veterans Act of 2022," granted a presumption of service connection for certain disabilities of Palomares veterans. *Id.* § 402, 136 Stat. at 1780. The report from the House Committee on Veterans' Affairs noted the challenges faced by Palomares veterans in obtaining relief from the VA, and cited this class action as an example. H.R. Rep. No. 117-249, pt. 1, at 9 (2022). The Report states:

> Air Force dosing estimates have also been challenged by veterans and advocacy groups in a class action suit led by one participant, Victor Skaar. In *Skaar v. Wilkie*, the [Veterans Court] . . . found that VA had not fulfilled its legal responsibility to determine whether the method it uses to assess Palomares veterans' radiation exposure is scientifically sound.

*Id.*

\* \* \*

For the foregoing reasons, we respectfully suggest that the panel's legal analysis is contrary to Supreme Court precedent and that en banc review should have been granted.